# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK E. IDSTROM, M.D.,

     Plaintiff,

     v.                                Case No. 19-2013-JAR-TJJ

GERMAN MAY, P.C., et al.,

     Defendants.

## MEMORANDUM AND ORDER

Plaintiff Mark E. Idstrom, M.D. brings this action against Defendants German May, P.C., Charles W. German, Brandon J.B. Boulware, Daniel Hodes, and John Does 1-10 (collectively, "German May"), alleging legal malpractice, breach of fiduciary duty, and Kansas Consumer Protection Act ("KCPA") claims. German May represented Idstrom in a Johnson County, Kansas District Court case (the "Underlying Lawsuit") that Idstrom brought against his former radiology practice, Alliance Radiology, P.A. ("Alliance"), and several of its directors (the "Director Defendants").[1] This matter is before the Court on Defendants' Motion to Dismiss (Doc. 7) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The motion is fully briefed, and the Court is prepared to rule. For the reasons fully described below, the Court **grants in part and denies in part** German May's motion to dismiss.

## I.     Standard

In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

---

[1] *Idstrom v. Alliance Radiology, et al.*, Case No. 12CV03757.

claims."[2]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

The parties do not dispute that in deciding this motion to dismiss, the Court may judicially notice the state court documents from the Underlying Lawsuit that German May

---

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *Id.*

[7] *Id.* at 679.

[8] *Id.*

[9] *Id.* at 678.

includes as exhibits to its motion and reply brief.  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court is "not precluded in [its] review of the complaint from taking notice of items in the public record."[10]  Generally, a court may take judicial notice of pleadings in prior cases without converting a motion to dismiss into one for summary judgment.[11]  In Kansas, court records are public records.[12]  Moreover, where a plaintiff refers in the complaint to a document that is central to the claims but does not incorporate or attach the document, "a defendant may submit an indisputably authentic copy of such document to the court to be considered on a motion to dismiss."[13]  Accordingly, in judging the legal sufficiency of Idstrom's Complaint, the Court considers the allegations in light of the following documents from the court record in the Underlying Lawsuit, which are referenced by Idstrom in his Complaint and also provided to the Court by German May:[14] (1) the jury instructions in the Underlying Lawsuit, including the completed and signed verdict forms;[15] (2) Idstrom's memorandum in support of a new trial in the Underlying Lawsuit;[16] (3) the trial court's order on post-trial motions in the Underlying Lawsuit;[17] and (4) the Kansas Court of Appeals' (the "KCOA") decision in the Underlying Lawsuit.[18]

---

[10] *Papasan v. Allain*, 478 U.S. 265, 258 n.1 (1986); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

[11] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[12] *Baker v. Hayden*, 419 P.3d 31 (Kan. Ct. App. 2018) (citing K.S.A. § 45-221(a)(1)).

[13] *Hall v. Witteman*, 569 F. Supp. 2d 1208, 12016 (D. Kan. 2008) (quoting *GFP v. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

[14] *See GFP*, 130 F.3d at 1384–85.

[15] Doc. 8-1.

[16] Doc. 8-5.

[17] Doc. 18-2.

[18] Doc. 1-2; *Idstrom v. Alliance Radiology, P.A.*, 388 P.3d 923 (Table), 2017 WL 129926 (Kan. Ct. App. 2017).

## II.    Facts

Unless otherwise indicated, the following facts are drawn from Idstrom's Complaint and construed in the light most favorable to him.[19]

*Parties*

Idstrom is currently a citizen and resident of Florida.  Defendant German May, P.C. is a Kansas City, Missouri based law firm; Defendant German (a Missouri resident), Defendant Boulware (a Missouri resident), and Defendant Hodes (a Kansas resident), were agents and/or employees of German May, P.C.  German May filed the Underlying Lawsuit on behalf of Idstrom on May 8, 2012 and was solely responsible for his representation at both the trial and appellate levels.  In the Underlying Lawsuit, Idstrom asserted claims for Kansas Restraint of Trade Act ("KRTA") violations, breach of fiduciary duty, civil conspiracy, and wrongful termination.[20]

*The Underlying Lawsuit: Facts*

In August 1998, four competing radiology practices merged to form a "super group"— Alliance—in the Kansas City metropolitan area.  Each of the previously independent groups became a "division" of Alliance but operated their respective businesses autonomously by paying their own expenses, keeping their own profits, not sharing in the risks of the other divisions, and basing the doctors' incentive compensation solely on the performance of their respective division.  Each division signed its own hospital contracts, maintained responsibility for ensuring its geographical business remained in business, and made its own decisions about marketing, scheduling, hiring, firing, and promotion to shareholder.  The divisions serviced the

---

[19] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

[20] *Idstrom v. Alliance Radiology, et al.*, Case No. 12CV03757.

same hospitals they did prior to forming Alliance, but also added other hospitals and facilities based on agreed-upon geographic allocations between the divisions.

Idstrom joined Alliance's St. Luke's Division in May 2005 as an associate at Alliance's largest client, St. Luke's Hospital. His employment agreement provided that his employment could be terminated at any time, with or without cause, with the approval of seventy-five percent of the shareholders in his division. In 2007, Idstrom purchased 100 shares of Alliance stock and became an Alliance shareholder; he later became president of the St. Luke's Division and a member of Alliance's Board of Directors. Also in 2007, Alliance's contract with St. Luke's was set to expire. St. Luke's proposed an offer that would have allowed Idstrom and other radiologists in the division to continue working at St. Luke's. The other Alliance divisions, however, prevented the St. Luke's Division from entering into the new contract because Alliance would not be St. Luke's exclusive radiology provider. The other divisions did not allow the St. Luke's Division radiologists to work at the other three divisions' hospitals. Upon losing the St. Luke's contract, the St. Luke's Division was renamed the Midwest Division.

In 2007, the U.S. Oncology Network approached Alliance about reading outpatient diagnostic images from several hospitals. Idstrom and the Midwest Division had an established relationship with physicians and patients at several of these hospitals. Due to Alliance's market allocation process, the Shawnee Mission Division of Alliance obtained exclusive rights to all outpatient diagnostic business from U.S. Oncology. Similarly, a U.S. Oncology physician approached the Midwest Division about providing interventional radiology services, expressing an interest that the Midwest Division and Idstrom provide the services. At Alliance Board meetings, however, the Shawnee Mission Division objected, and the Alliance Board authorized the Shawnee Mission Division to receive the exclusive contract for interventional radiology,

despite not having the requisite number of interventional radiologists. Accordingly, Idstrom could not provide services for U.S. Oncology.

In 2010, Centerpoint Medical Center ("Centerpoint") presented a significant financial opportunity for the radiologists in the Midwest Division. Centerpoint had a contract with another radiology firm, Western Missouri Radiological Group ("WMRG"). Centerpoint's CEO approached Idstrom about the Midwest Division providing interventional radiology services. Centerpoint requested that if Alliance received the contract, that the Shawnee Mission and Carondolet Divisions not be involved. The Midwest Division briefly worked at Centerpoint because it was the only Alliance Division with the physician capacity to serve the hospital. Centerpoint proposed that the Midwest Division merge with WMRG and assume Centerpoint's contract for both diagnostic and interventional radiology services. When Idstrom proposed the merger to the Alliance Board, the Carondolet and Shawnee Mission Divisions blocked the contract, arguing that Centerpoint fell outside of the Midwest Division's geographic territory.

In 2010, Alliance's Board—except representatives from the Midwest Division—met at Hallbrook Country Club to discuss Idstrom's challenges to both Alliance's market allocation scheme and Alliance's failure to support the Midwest Division after the loss of the St. Luke's business. Dr. Anthony Harmon presented the idea of removing the Midwest Division from Alliance if the Board did not agree to remove Idstrom from the Board as president of the division, and after discussion, the shareholders from the other three divisions voted to remove the Midwest Division from Alliance. Shortly after this meeting, Dr. Douglas Best, a Midwest Division shareholder and Alliance board member, met with the other Alliance directors and laid out conditions under which the Midwest Division could remain in Alliance—specifically that (1) Idstrom be removed as president of the Midwest Division, (2) Idstrom be removed from the

Alliance Board, and (3) Idstrom be prevented from any further negotiations with potential customers. The Midwest Division agreed to these conditions, and Alliance's shareholders subsequently voted to reinstate the Midwest Division. Idstrom remained a shareholder and employee of the Midwest Division. When Centerpoint learned that Idstrom was removed as president of the Midwest Division, it gave the contract to another radiology group.

In late 2011, Dr. Best communicated with Virtual Radiology Group ("vRAD") about a potential merger. If the merger occurred, Midwest Division shareholders would receive a combined $4 million payout. However, vRAD refused to complete the merger if Idstrom remained an employee of the Midwest Division. The Midwest Division shareholders—other than Idstrom—unanimously voted to terminate Idstrom, without cause, on February 3, 2012. Idstrom alleges that because of his termination, he was effectively excluded from practicing radiology in the Kansas City metropolitan area; Idstrom was required to sign a resignation of medical staff membership when he was hired, and Alliance demands exclusive hospital contracts that bar non-Alliance radiologists from working at the hospitals. Since his termination, Plaintiff has not found work in the Kansas City metropolitan area.

### The Underlying Lawsuit: Pretrial Litigation

Former German May partner Boulware was in charge of the Underlying Lawsuit. At the time he drafted and filed the petition, Boulware was not licensed to practice law or admitted pro hac vice in Kansas. During the three years of pretrial litigation, German May filed three petitions on Idstrom's behalf. In the prayer for relief following the breach of fiduciary count in each petition, German May claimed "punitive damages for the willful and reckless breach of fiduciary duty" on the part of the Director Defendants.[21] The Underlying Lawsuit was originally

---

[21] Doc. 1 ¶ 42.

set for trial on July 14, 2014. A final pretrial conference was held on April 10, 2014. On

Idstrom's portion of the final Pretrial Order, which German May approved and prepared, the

section on "Amendments to Pleadings" stated "None." On July 11, 2014, German May

requested the trial be continued, and the trial was rescheduled for May 5, 2015.

Prior to trial, and during a hearing on the Director Defendants' motion for summary

judgment, the trial court sua sponte granted summary judgment in favor of the Director

Defendants on Idstrom's claim for breach of fiduciary duty resulting in his wrongful termination.

Without briefing or explanation, the trial court judge reasoned, "I'm going to grant the fiduciary

duty motion with respect to post-termination, and here's the reason. There can't be any breach

of fiduciary duty in terminating Dr. Idstrom when his contracts of employment specifically

provided that employment could be terminated for any reason."[22] The trial court also granted the

Director Defendants' motion for summary judgment on KRTA claims that arose before May 8,

2009. On April 7, 2015, the Director Defendants filed a motion in limine to exclude all evidence

and argument about punitive damages because German May had not sought leave to amend

Idstrom's petition to include a punitive damage claim, as required by K.S.A. 60-3703.[23] In

response, on April 17, 2015, German May filed a motion to amend Plaintiff's petition to include

a punitive damage claim, which the trial court denied as the parties were bound to the Pretrial

Order, listing no amendments to pleadings.[24]

---

[22] *Id.* ¶ 64.

[23] *Idstrom v. Alliance Radiology, P.A.*, 388 P.3d 923 (Table), 2017 WL 129926, at *12 (Kan. Ct. App. Jan. 13, 2017).

[24] *Id.* at *12.

### The Underlying Lawsuit: Trial

At trial, a jury heard the following claims: (1) all defendants violated the KRTA by forming and operating Alliance; (2) certain Director Defendants breached fiduciary duties owed to Dr. Idstrom in their capacities as Alliance Directors by allocating work under Alliance's Divisions' hospital contracts in a manner that personally benefitted them, precluding certain Alliance radiologists from performing services at certain hospitals, and causing business to be directed away from Alliance; (3) Director Defendants Best, Richardson, and Varriano breached their fiduciary duties to Idstrom by putting their interests above his in order to earn more money from the proposed vRAD merger; and (4) all defendants engaged in a civil conspiracy to commit the underlying torts. The jury found that Alliance did not violate the KRTA but awarded Idstrom $718,500 in damages because certain Director Defendants breached fiduciary duties to him and were engaged in a civil conspiracy to financially harm him.

### The Underlying Lawsuit: Post-Trial Motions

Both Idstrom and the Director Defendants filed several post-trial motions. The trial court (1) denied Idstrom's motion for a new trial on the grounds that Jury Instruction No. 25 was contrary to Kansas law because German May did not object to the instruction; (2) denied Idstrom's motion for a new trial based on defense counsel's prejudicial and inflammatory closing argument emphasizing Jury Instruction No. 25 and other reasons because German May did not object to the statements; (3) upheld the $718,500 breach of fiduciary duty and civil conspiracy verdict; (4) vacated the breach of fiduciary duty verdict against Director Defendant Anthony as barred by the statute of limitation; (5) vacated the breach of fiduciary duty verdicts against Director Defendants Best, Richardson, and Varriano because it deemed the nominal damages "post-termination" damages, which had been dismissed on summary judgment; (6) vacated the

9

civil conspiracy award as to Alliance and Director Defendant Anthony, but upheld the award as to the remaining Director Defendants; and (7) denied Idstrom's post-trial contention that the court had improperly denied his motion to amend his petition to add a punitive damage claim and affirmed its prior ruling that the motion to amend was untimely.[25]

### The Underlying Lawsuit: Appeal

Following post-trial motions, both parties appealed to the KCOA. German May represented Idstrom on appeal. On appeal, Idstrom contended that the district court "injected a procedural requirement that did not exist" to deny Idstrom's motion to add a punitive damage claim because Idstrom had alleged punitive damages in his petition and in the Pretrial Order. The KCOA affirmed the trial court's decision because

> [t]hroughout the proceedings, the district court consistently held the parties were bound by the April 10, 2014, final pretrial order. A reasonable person could take the view adopted by the district court. The district court did not abuse its discretion when it denied Idstrom's motion to amend his pleadings to include a claim for punitive damages.[26]

Additionally, on the issue of the trial court granting summary judgment on Idstrom's breach of fiduciary duty post-termination damages, Idstrom argued that this was clear error and an abuse of discretion because (1) the Director Defendants did not file a motion for summary judgment on the claim and the trial court decided the issue without the benefit of briefing or explanation and (2) the trial court failed to grasp both that Idstrom was terminated because of his opposition to Alliance's alleged anti-competitive market allocation scheme and certain Director Defendants breached their fiduciary duty to cheat him out of his share of a $4 million proposed

---

[25] Doc. 18-2.

[26] Doc. 1 ¶ 54; *Idstrom v. Alliance Radiology, P.A.*, 388 P.3d 923 (Table), 2017 WL 129926, at *13 (Kan. Ct. App. Jan. 13, 2017).

merger with vRAD.[27]  The KCOA held that because the motion for summary judgment was not included in the record on appeal, it was impossible to determine whether the trial court improperly raised the issue sua sponte or improperly granted part of the Director Defendants' motion for summary judgment.[28]  According to Idstrom's expert witness, had the KCOA reversed the trial court's decision and remanded the case, the jury would have awarded Idstrom $4,510,578.00 in post-termination damages.[29]

Additionally, Idstrom argued on appeal that the trial court erred in granting the Director Defendants' motion for summary judgment on any KRTA claim arising before May 8, 2009 as barred by the statute of limitations because there were factual issues as to whether the statute of limitations should be tolled or extended.  However, the KCOA again determined that Idstrom's claim failed because the Defendant Directors' motion for summary judgment was not included in the record on appeal.[30]

Idstrom also appealed the trial court's inclusion of Jury Instruction No. 25 and argued that the finding that Alliance was not a trust was against the weight of the evidence.  The KCOA reviewed the instruction for clear error—rather than de novo—because although Idstrom indicated he disagreed with the language many times, he did not object to the language at any of the places cited in his brief; he also did not object to the instructions when explicitly asked by the trial court during the instruction conference.[31]  Jury Instruction No. 25 read as follows:

> (1) That Alliance is a Trust (as instructed in Instruction No. 21);
> (2) That one or more of the individual Defendants formed or are
>     interested, either directly or indirectly, in Alliance; and

---

[27] Doc. 1 ¶ 67.

[28] Doc. 1 ¶ 64–83; *Idstrom*, 2017 WL 129926, at *12.

[29] Doc. 1 ¶ 83.

[30] *Id.* ¶ 86; *Idstrom*, 2017 WL 129926, at *11–12.

[31] *Idstrom*, 2017 WL 129926, at *10.

(3) The actions of the individual defendants were separate from the action of defendant Alliance Radiology.[32]

The KCOA found there was no clear error because Jury Instruction No. 25 was correct, and even if there was error as to the third element, it was harmless because the jury found that Alliance was not a trust.[33]

Finally, Idstrom did not appeal the trial court's denial of Idstrom's motion for a new trial based on defense counsel's prejudicial and improper closing argument.

## III.  Discussion

### A.  Legal Malpractice

An action for legal malpractice in Kansas may sound in tort or contract.[34]  "Where the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not the contract itself, the action is in tort."[35]  Here, it is undisputed that Idstrom's claims sound in tort.  To prevail on a legal malpractice claim sounding in tort, the plaintiff must show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage.[36]  In addition to the basic elements of a negligence case, the plaintiff must also prove actual damage through the "but for" rule: but for the attorney's negligence, the plaintiff would have succeeded in the underlying lawsuit.[37]  This requires that the

---

[32] Doc. 1 ¶ 94; Doc. 8-1 at 22.

[33] *Idstrom*, 2017 WL 129926, at *10-11.

[34] *Bowman v. Doherty*, 686 P.2d 112, 120 (Kan. 1984).

[35] *Id.*

[36] *Canaan v. Bartee*, 72 P.3d 911, 914–15 (Kan. 2003) (quoting *Bergstrom v. Noah*, 974 P.2d 531, 553 (Kan. 1999)).

[37] *Webb v. Pomeroy*, 655 P.2d 465, 467–68 (Kan. Ct. App. 1982); *see also Augustine v. Adams*, No. 95–2489–GTV, 1997 WL 298451, at *3 (D. Kan. May 2, 1997) (citation omitted).

plaintiff prove three additional elements: (1) that the underlying claim was valid, (2) that he would have received a favorable judgment but for the attorney's error, and (3) that the judgment was collectible.[38]

Additionally, some of Idstrom's claims sound specifically in appellate malpractice. To succeed on an appellate malpractice claim, the plaintiff must prove that, but for the attorney's alleged negligence, the plaintiff would have prevailed on appeal.[39] No Kansas appellate court has addressed whether the probability of success on appeal in an appellate legal malpractice case is a question of fact for the jury or a question of law for the court. In resolving this issue, it is well settled that this Court must attempt to ascertain and apply state law, which in this case is the law of Kansas.[40] The Court must look to the rulings of the state's highest court and, where no controlling state decision exists, the Court must endeavor to predict how the state's highest court would rule.[41] The Court should consider analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority.[42] Ultimately, the Court's task is to predict what decision the Kansas Supreme Court would make if faced with the same facts and issue.[43]

While there is no guiding Kansas appellate decision, the majority of courts find that the

---

[38] *Webb*, 655 P.2d at 468 (citing Meisleman, Attorney Malpractice: Law and Procedure § 3:5 at 44 (1980)); *see also Augustine*, 1997 WL 298451, at *3 (citation omitted).

[39] *See Dings v. Callahan*, 602 P.2d 542, 543–44 (Kan. 1979) (citations omitted) ("An actionable claim against an attorney for professional malpractice asserting failure to prosecute an appeal or protect the client's rights to appeal from an unfavorable judgment or order requires proof that had a timely appeal been taken, a reversal or more favorable judgment would have resulted."); *see also* Ronald E. Mallen, 4 Legal Malpractice § 33:118 (2019 ed.).

[40] *Wade v. Emasco Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007).

[41] *Id.*

[42] *MidAmerica Constr. Mgmt., Inc. v. MasTex N. Am., Inc.*, 463 F.3d 1257, 1262 (10th Cir. 2006).

[43] *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).

issue of causation in an appellate legal malpractice action is a question of law for the court.[44]

The rationale for this rule is that the likelihood of prevailing before an appellate court inherently

requires analyzing legal issues and procedural rules, an endeavor that juries are not equipped to

undertake.[45] The Court finds that the Kansas Supreme Court would agree with this rationale and

follow the majority approach. Accordingly, the Court must determine the legal merits of the

appellate issues that the KCOA declined to consider because of General May's alleged

negligence.[46]

### 1. Punitive Damages

Idstrom first claims that German May's acts and omissions deprived him of the

opportunity to recover punitive damages against defendants in the Underlying Lawsuit and seeks

these "lost" punitive damages in the form of compensatory damages from German May.

Under Kansas law, punitive damages are not intended to compensate an injured party, but

instead are designed to "punish" a wrongdoer for malicious, willful, or wanton invasion of

another's rights.[47] Thus, "punitive damages are not given upon any theory that the plaintiff has

---

[44] *See e.g.*, *Governmental Interinsurance Exch. v. Judge*, 850 N.E.2d 183, 194 (Ill. 2006) ("Indeed, the vast majority of courts that have addressed [the issue of proximate cause in an appellate legal malpractice case] have concluded that [it] presents a question of law for the court and not a question of fact for a jury."); *Steeves v. Berstein, Shur, Sawyer & Nelson, P.C.*, 718 A.2d 186, 190–91 (Me. 1998) ("Numerous courts have recognized that the determination of whether an appeal not taken would have succeeded is 'within the exclusive province of the court, not the jury. . . .'" (citations omitted)); *Sturgis v. Skokos*, 977 S.W.2d 217, 221–22 (Ark. 1998); *Cabot, Cabot & Forbes v. Brian, Simon, Peragine, Smith & Redfearn*, 568 F. Supp. 371, 372, 374 (E.D. La. 1983); *Daugert v. Pappas*, 704 P.2d 600, 603 (Wash. 1985) (en banc) (citing various sources) (citations omitted); *Chocktoot v. Smith*, 571 P.2d 1255, 1259 (Or. 1977) (en banc); *Croce v. Sanchez*, 256 Cal. App. 2d 680, 682–84 (Cal. Ct. App. 1967), *cert. denied*, 391 U.S. 927 (1968).

[45] *See Tinelli v. Redl*, 199 F.3d 603, 606–07 (2d Cir. 1999) ("To rule . . . that a jury should decide how an appellate court would have ruled—would misconstrue the very nature of appellate review. Appellate courts decide matters as 'issues[s]of law, based upon review of the transcript and . . . the argument of counsel." (citations omitted)).

[46] *See Jones v. Psimos*, 882 F.2d 1277, 1281 (7th Cir. 1989) ("When analyzing the merits of an attorney malpractice claim, the court must put itself into the role of the court that ought to have reviewed the underlying claim but missed its chance because of the attorney's negligence in perfecting the appeal.") (citing R.E. Mallen & V.B. Levit, *Legal Malpractice* § 583, at 738–40 (2d ed. 1981)).

[47] *Adamson v. Bicknell*, 287 P.3d 274, 280 (Kan. 2012).

any just right to recover them, but are given only upon the theory that the defendant deserves punishment for his wrongful acts."[48] Idstrom does not allege an injury arising from any willful or wanton conduct of German May, nor does he assert this as the basis for punitive damages. Instead, he theorizes that as part of its compensatory damages, German May is liable for the punitive damages that Idstrom could not recover in the Underlying Lawsuit. German May argues that this claim should be dismissed because it is contrary to (1) Kansas' policy on punitive damages, (2) the decisions of a majority of other state appellate courts that have decided the issue, and (3) the Wyandotte County, Kansas District Court's decision in *Dollins v. Amick*.[49] Notably, German May does not argue that a jury could not find punitive damages should have been awarded in the Underlying Lawsuit. Instead, the parties dispute whether Kansas law permits a plaintiff to recover "lost" punitive damages from an underlying case as compensatory damages in a subsequent legal malpractice action.

Jurisdictions are split as to whether a plaintiff alleging legal malpractice can recover compensatory damages in the amount of punitive damages that allegedly would have been awarded in the absence of the alleged malpractice. The recent trend among courts, however, is to prohibit plaintiffs from recovering as compensatory damages the amount of punitive damages that allegedly would have been awarded in the underlying case.[50] The Restatement (Third) of the

---

[48] *Smith v. Printup*, 866 P.2d 985, 992 (1993) (internal quotations and citations omitted).

[49] No. 06CV1533 (D. Wyandotte Cty. Oct. 9, 2009).

[50] *See e.g.*, *McMurty v. Wiseman, III*, No. 1:04CV-81-R, 2006 WL 2375579, at *3 (W.D. Ky. Aug. 16, 2006) (finding that a "lost" punitive damages claim should not go forward and is "consistent with the modern trend amongst other jurisdictions"); *Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP*, 69 P.3d 965, 970 (Cal. 2003) ("Making a negligent attorney liable for lost punitive damages would not serve a societal interest, because the attorney did not commit and had no control over the intentional misconduct justifying the punitive damage award."); *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 417 (Ill. 2006) (deciding, as a matter of first impression, that "[l]ost punitive damages are not recoverable in a subsequent action for legal malpractice"); *Osborne v. Kenney*, 399 S.W.3d 1, 22–23 (Ky. 2012) (holding that "lost punitive damages are not recoverable from the attorney against whom a malpractice claim is brought" as the case law does not support punitive damages being recast as compensatory damages and allowing them to be collected would negate their deterrence function); *Braun v. Rosenblum*, 811 N.Y.S.2d 683, 383 (N.Y. App. Div. 2006) (applying New York law and finding in a legal

Law Governing Lawyers explains that allowing punitive damages as compensatory damages in a legal malpractice action does not promote the policy goals of punitive damages as "[c]ollecting punitive damages from the lawyer will neither punish nor deter the original tortfeasor and calls for a speculative reconstruction of a hypothetical jury's reaction."[51]

While there is no Kansas appellate authority directly on point on the issue, German May points the Court to a District Court of Wyandotte County, Kansas decision concluding that Kansas appellate courts would follow the trend of prohibiting plaintiffs from recovering as compensatory damages the punitive damages that allegedly would have been awarded in the underlying case.[52] In *Dollins v. Amick*, the plaintiff sought compensatory damages from her attorney based on the loss of a civil suit.[53] Similar to German May, the defendant attorney moved for summary judgment, arguing that the plaintiff could not seek "lost" punitive damages from the underlying case.[54] After reviewing appellate case law, the Wyandotte County District Court determined "the modern trend in jurisdictions is to deny the claim of lost punitive damages against an attorney and the [c]ourt concludes a ruling by the [Kansas] Supreme Court would be consistent."[55] Accordingly, the court found "that the law of the State of Kansas does not permit

---

malpractice action that "the plaintiffs may not recover in the instant legal malpractice action for any punitive damages that were 'lost' when the underlying personal injury action was dismissed" (citing *Summerville v. Lipsig*, 270 A.D.2d 213, 213 (2000)); *Friedland v. Djukic*, 945 N.E.2d 1095, 1100–01 (Ohio Ct. App. 2010) (affirming the trial court's determination that "lost" punitive damages were not recoverable in a legal malpractice action and noting that "the purpose of imposing punitive damages is not served when those damages are imposed on a party guilty of mere negligence"); *but see Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 102 (D.D.C. 2002); *Haberer v. Rice*, 511 N.W.2d 279, 286 (S.D. 1994); *Scognamillo v. Olsen*, 795 P.2d 1357, 1361 (Col. Ct. App. 1990).

[51] Restatement (Third) of the Law Governing Lawyers § 53 cmt. h (2000).

[52] *Dollins v. Amick*, No. 06CV1533 (D. Wyandotte Cty. Oct. 9, 2009) (unpublished state trial court decision), Doc. 8-2.

[53] Brief for Defendant, *Dollins v. Amick*, No. 06CV1533 (D. Wyandotte Cty. Oct. 9, 2009), Doc. 8-3 at 26.

[54] *Id.* at 26.

[55] *Amick*, No. 06CV1533, Doc. 8-2 at 2.

a Plaintiff in a legal malpractice claim to recover 'lost punitive' damages that may have been available in a prior or underlying action."[56]

Idstrom attempts to discredit any reliance on *Amick*, arguing that it is contrary to the Kansas Supreme Court's ruling in *Hunt v. Dresie*.[57] The *Hunt* decision, however, does not address the issue presently before the Court, and therefore does not bind the Court in determining whether Kansas law permits recovery of "lost" punitive damages. In *Hunt*, the plaintiff sought to recover punitive damages awarded *against* him, which he alleged resulted from attorney malpractice.[58] Following his attorney's unsuccessful prosecution of a suit on behalf of Hunt, Hunt was successfully sued for malicious prosecution and $600,000 in punitive damages were awarded against him.[59] Hunt then filed suit against his attorney—who represented him in both the suit underlying the malicious prosecution and the malicious prosecution case—for legal malpractice in defending the malicious prosecution case and sought indemnity for the punitive damages.[60] On appeal, the Kansas Supreme Court found that the defendant could be liable for the punitive damages awarded against Hunt in the malicious prosecution case.[61] The court explained the malicious prosecution judgment against Hunt "included [punitive damages] from the vantage point of that lawsuit. From the vantage point of *this* lawsuit, should Hunt be successful, all the damages are simply those which proximately resulted from his attorneys' negligence; they are no longer properly called punitive damages."[62] The defendant was

---

[56] *Id.* at 1–2.

[57] 740 P.2d 1046 (Kan. 1987).

[58] *Id.* at 1048.

[59] *Id.*

[60] *Id.* at 1051, 1056–57.

[61] *Id.* at 1057.

[62] *Id.* (emphasis in original).

inextricably intertwined with the malicious prosecution charge because he was negligent in failing to raise the proper defense in the malicious prosecution case and during the investigation and filing of the underlying lawsuit.[63]  The Kansas Supreme Court further explained its reasoning with the following example:

> [I]f a crash victim sues an attorney's client for injuries the client inflicted by negligent driving and the attorney negligently defends his client, resulting in the client's liability, the client may recover those damages from the attorney, if at all, not because the attorney had anything to do with the wreck, but because the attorney's negligence caused the loss of the lawsuit.[64]

Thus, *Hunt* stands for the proposition that a negligent attorney cannot escape liability for punitive damages *assessed against* his client because of the attorney's conduct.  No Kansas court has extended the reasoning to an allegedly negligent attorney liable for punitive damages that were *not awarded to* his client—the issue presently before this Court.

Idstrom asserts that courts outside Kansas have relied on *Hunt* to support awarding "lost" punitive damages to plaintiffs in legal malpractice actions.[65]  To the extent these courts have relied on *Hunt* for the proposition that a plaintiff can recover "lost" punitive damages in a legal malpractice claim, the Court finds that *Hunt* was misconstrued to support a broader proposition than intended.  As discussed above, *Hunt* supports the conclusion that in legal malpractice actions "Kansas courts expressly allow a plaintiff to recover the punitive damages *awarded* in

---

[63] *Id.*

[64] *Id.*

[65] *See Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 100–02 (D.D.C. 2002) (relying on *Hunt* and other cases, to decide that as a matter of first impression, that the District of Columbia would allow the recovery of "lost" punitive damages in a legal malpractice action); *Elliott v. Videan*, 791 P.2d 639, 644–45 (Ariz. Ct. App. 1990) (relying on *Hunt* and a Texas Court of Appeals decision to support imposing "lost" punitive damages in a legal malpractice action).

the underlying action."[66]  The Court thus finds *Amick* persuasive on the issue of Idstrom's ability to recover the alleged "lost" punitive damages from German May in this legal malpractice action.[67]  Accordingly, the Court predicts that the Kansas Supreme Court would conclude that a plaintiff cannot recover as compensatory damages the punitive damages that allegedly would have been awarded in an underlying case absent his attorneys' legal malpractice.  Idstrom cannot state a legal malpractice claim against German May for compensatory damages arising out of his speculative "lost" punitive damages in the Underlying Lawsuit.

### 2.      Jury Instruction No. 25

Idstrom also argues that Jury Instruction No. 25 in the Underlying Lawsuit was erroneous and that German May's failure to object to the instruction precluded the KCOA from finding it erroneous on appeal.  Jury Instruction No. 25 set forth the elements of a KRTA claim against the individual defendants, which the defendants prevailed on.  Jury Instruction No. 25 stated:

> Plaintiff Dr. Idstrom may recover damages from the individual
> defendants for violation of the Kansas Restraint of Trade Act only
> if you find that Plaintiff Dr. Mark Idstrom has proven:
>> (1)      That Alliance is a Trust (as instructed in Instruction
>> No. 21);

---

[66] *See Waddell & Reed Fin. Inc. v. Torchmark Corp.*, 223 F.R.D. 566, 531 (D. Kan. 2004) (emphasis added) (citing *Hunt*, 740 P.2d at 1057).

[67] The United States Supreme Court has explained the authority of state courts on matters of state law:

> There are many rules of decision commonly accepted and acted upon by the bar
> and inferior courts which are nevertheless laws of the state although the highest
> court of the state has never passed upon them. In those circumstances a federal
> court is not free to reject the state rule merely because it has not received the
> sanction of the highest state court, even though it thinks the rule is unsound in
> principle or that another is preferable. State law is to be applied in the federal as
> well as the state courts[,] and it is the duty of the former in every case to
> ascertain from all the available data what the state law is and apply it rather than
> to prescribe a different rule, however superior it may appear from the viewpoint
> of "general law" and however much the state rule may have departed from prior
> decisions of the federal courts.

*West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236–37 (1940); *see also Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1000–01 (10th Cir. 2002) (quoting *West*, 311 U.S. at 236–37).

> (2) That one or more of the individual Defendants formed or are interested, either directly or indirectly, in Alliance; and
>
> (3) The actions of the individual defendants were separate from the action of defendant Alliance Radiology. You may find that an individual was or is interested in Alliance because he or she served as a principal, agent, representative, cosignee or otherwise.[68]

Idstrom alleges that German May "should have immediately recognized the language of Jury Instruction No. 25 was a misstatement of Kansas law because the KRTA did not require actions of the individual Director Defendants to be 'separate from the actions' of Alliance."[69] He further alleges that German May's failure to object to Jury Instruction No. 25 deprived him of a more favorable standard of review by limiting the trial and appellate courts' review of the instruction to clear error. German May argues that Idstrom fails to state a claim because the KCOA concluded that Jury Instruction No. 25 was correct and any error in the third element of the instruction was harmless because the jury found that Alliance was not a trust—the first element required for the KRTA claim.

As Dr. Idstrom does not plead that the jury found Alliance was a trust, the jury could not have found for Idstrom on his KRTA claim. Jury Instruction No. 21 states, "Your verdict must be for Dr. Idstrom on his claim under the Kansas Restraint of Trade Act against Defendant Alliance if Dr. Idstrom proves that Alliance Radiology is a trust."[70] As the jury did not find in favor of Idstrom on his KRTA claim and Idstrom does not allege that the jury did not follow the jury instructions, the Court cannot conclude that the jury found Alliance was a trust, but

---

[68] Doc. 8-1 at 22.

[69] Doc. 1 at 95.

[70] *See* Doc. 8-1 at 18.

disregarded the jury instructions.[71]  Therefore, even if German May had properly objected to the

Jury Instruction No. 25, Idstrom would not have prevailed on appeal as the jury did not find

Alliance was a trust.  Accordingly, as a matter of law, German May's failure to object did not

cause the KCOA to deny Idstrom's appeal on the allegedly erroneous jury instruction.

Moreover, to determine whether a jury instruction is legally and factually correct, the

KCOA uses an "unlimited review of the entire record" whether or not the instruction was

objected to at trial.[72]  The reversibility inquiry is the only difference—requiring clear error in the

absence of an objection.[73]  Skipping to the reversibility inquiry, the KCOA found that if Jury

Instruction No. 25 was erroneous it "did not affect the jury's verdict and was harmless,"

explaining that because the jury did not find that Alliance was a trust as required by the first

element, the jury could not find the individual defendants liable under the KRTA.[74]  In doing so,

the KCOA also noted that it did not agree with the argument that including the third element in

Jury Instruction No. 25 was erroneous.[75]  As an unlimited review of the entire record is the basis

for determining whether a jury instruction is erroneous, even in the presence of a proper

objection, the KCOA would have reached the same conclusion—that Jury Instruction No. 25 was

---

[71] *Mission Hills v. Sexton*, 160 P.3d 812, 829 (Kan. 2007) (finding that jury instructions are presumed to be followed) (citing *McConwell v. FMG of Kan. City, Inc.*, 861 P.2d 830, 841 (Kan. Ct. App. 1993)).

[72] *State v. McLinn*, 409 P.3d 1, 10–11 (Kan. 2018) (citations omitted).

[73] *Id.*

[74] *Idstrom v. Alliance Radiology, P.A.*, 388 P.3d 923 (Table), 2017 WL 129926, at *11 (Kan. Ct. App. Jan. 13, 2017).  The KCOA explained: "[w]hen the jury found Alliance Radiology had not violated the Kansas Restraint of Trade Act, it was reasonable to conclude the jury did not find Alliance Radiology was a trust.  As a result, even despite the alleged error, the jury could not find the individual defendants liable under the Kansas Restraint of Trade Act because Idstrom did not prove Alliance Radiology was a trust."

[75] *See id.* ("Even if the inclusion of the complained-of language in Jury Instruction 25 was error—an argument we do not agree with—we find the error did not affect the jury's verdict and was harmless.").

correct.[76]  Thus, any alleged error in jury instructions caused by German May cannot support Idstrom's legal malpractice claims.

### 3. Preservation for Appeal of Trial Court's Partial Grant of Summary Judgment on Statute of Limitations

Idstrom alleges that German May's failure to preserve for appeal the trial court's partial grant of summary judgment on the statute of limitations issue harmed him.  Idstrom asserts that the district court granted summary judgment against him on any KRTA claims that arose before May 8, 2009, despite factual issues as to whether the statute of limitations should be tolled or extended.  He asserts that Alliance's lawyer told him that he could not do anything concerning Alliance's alleged illegal anticompetitive conduct because he was prohibited from suing Alliance and that this directive prevented him from pursuing his KRTA claims earlier.

On appeal, German May did not include the Director Defendants' motion for summary judgment or the supporting memorandum in the appellate record.  Thus, the KCOA did not address whether the trial court erred in granting summary judgment for the Director Defendants on the KRTA claims arising before May 8, 2009 because Idstrom had not met his burden of designating facts in the record to support his claim.[77]  This Court must consider whether the KCOA would have ruled in favor of Idstrom had German May perfected the record for appeal.

German May argues that its alleged failure to perfect the record for appeal did not harm Idstrom because the jury found—and the KCOA found sufficient evidence to support the finding—that Alliance was not a trust, an element required for Idstrom to succeed on his KRTA claim by Jury Instruction No. 25.[78]  Moreover, Jury Instruction No. 27 instructed:

---

[76] *See id.* at *10 (stating in the section header "Jury Instruction 25 was correct").

[77] *Idstrom v. Alliance Radiology, P.A.*, 388 P.3d 923 (Table), 2017 WL 129926, at *11–12 (Kan. Ct. App. Jan. 13, 2017) (table opinion).

[78] Doc. 8-1 at 22.

> The Court has found, as a matter of law, that the Plaintiff's Kansas Restraint of Trade Act actions and damages for actions prior to May 8, 2009 are barred by the statute of limitations. You have heard evidence of events and actions that occurred prior to this date. This evidence is only for use in reaching your conclusions on Instruction 20 – 28 regarding whether or not Defendant Alliance Radiology is an illegal trust. Plaintiff may not recover damages from actions prior to May 8, 2009, as it relates to the Kansas Restraint of Trade Act.[79]

Idstrom does not allege that the jury was prevented from considering evidence prior to May 8, 2009 when considering whether Alliance was an illegal trust. As the jury considered this evidence when finding that Alliance was not a trust—which the KCOA affirmed—Idstrom could not have recovered any KRTA damages, whether arising before or after May 8, 2009. Thus, even if the KCOA had found the trial court erred in its ruling on the statute of limitations issue, it would have found the error was harmless and upheld the jury verdict because the jury found Alliance was not a trust. Moreover, Idstrom does not assert that the alleged negligence resulted in the exclusion of evidence that would have resulted in a different outcome. Accordingly, the Court finds that Idstrom was not harmed by German May's failure to preserve for appeal the statute of limitations issue and this allegation fails to state claim under Rule 12(b)(6) for legal malpractice.

### 4. Closing Arguments

Idstrom also alleges that German May is liable for legal malpractice because it failed to object to Director Defendants' counsel's improper and prejudicial closing arguments and failed to appeal the trial court's denial of a new trial to remedy these alleged errors.[80] Specifically, Idstrom alleges that German May negligently failed to object when defense counsel erroneously

---

[79] *Id.* at 24.

[80] Doc. 1 ¶ 125.

"argued that Alliance was a registered professional association and therefore could not as a matter of law violate the KRTA because it was a single entity,"[81] and "argued that corporations cannot be held liable under the KRTA . . . [which was] specifically prohibited by [German May's] motion *in limine*[.]"[82]  Similarly, Idstrom alleges that German May negligently failed to object to the statement that "events surrounding the loss of the St. Luke's and U.S. Oncology business were 'out of the case' because of the statute of limitations."[83]  Idstrom asserts that German May's failure to object to the improper statements led the jury "to believe that much of the defendants' anticompetitive behavior could not be considered when deciding if Alliance was a trust."[84]  He further contends that had German May appealed the court's denial of his motion for new trial based on these improper closing statements, the KCOA would have remanded for a new trial where he would have prevailed on his KRTA claims.[85]  German May argues that, as a matter of law, failing to object to or appealing from the statements made in closing arguments did not harm Idstrom because the jury instructions prevented the statements from prejudicing Idsrtom, and therefore, the KCOA would not have reversed and remanded for a new trial.

Remarks of counsel result in reversible error when, because of them, the parties have not had a fair trial.[86]  However, "[w]here the alleged misconduct is isolated is insufficient to result in substantial prejudice or prevent a fair trial, the trial court's verdict will not be overturned."[87]

---

[81] *Id.* ¶ 112.

[82] *Id.* ¶ 113.

[83] *Id.* ¶¶ 114, 115.

[84] *Id.* ¶ 115.

[85] *Id.* ¶ 115–18.

[86] *Henderson v. Hassur*, 594 P.2d 650, 663 (Kan. 1979) (citing *Smith v. Blakey, Admin.*, 515 P.2d 1062, 1067 (Kan. 1973)).

[87] *Tamplin v. Star Lumber & Supply Co.*, 824 P.2d 219, 223–24 (Kan. Ct. App. 1991), *aff'd as modified*, 836 P.2d 1102 (Kan. 1992).

"[T]he trial court is in a better position than an appellate court to determine whether the verdict resulted from asserted misconduct of counsel or from passion and prejudice, and ordinarily its conclusion in the matter will not be disturbed."[88]

Under Kansas law, courts presume that the jury followed the trial court's jury instructions.[89] Jury Instruction No. 7 stated "It is your duty to follow these instructions. These instructions are the law in this case and they must be considered and applied to the evidence."[90] Jury Instruction No. 10 explained "statements and arguments of counsel are not evidence but may help you understand the evidence and apply the law. However, you should disregard any comments of counsel that are not supported by the evidence."[91] Moreover, with respect to the allegation that German May should have objected to opposing counsel's statement that certain events before May 8, 2009 were "out of the case" because they were "not out of the case for purposes of KRTA liability,"[92] Jury Instruction No. 27 instructed the jury that those events could be used in determining if Alliance was a trust—an essential element of a KRTA claim—but that Idstrom could not recover damages under the KRTA that flowed from the events prior to May 8, 2009.[93] Similarly, despite German May not objecting to opposing counsel's statements that a division of Alliance was not a person under the KRTA, the jury was properly instructed that a "person" includes "associations" and "business entities."[94]

---

[88] *Id.* (quoting *Tetuan v. A.H. Robins Co.*, 738 P.2d 1210, 1236 (Kan. Ct. App. 1987)).

[89] *Mission Hills v. Sexton*, 160 P.3d 812, 829 (Kan. 2007) (citing *McConwell v. FMG of Kan. City, Inc.*, 861 P.2d 830, 841 (Kan. Ct. App. 1993)).

[90] Doc. 8-1 at 3.

[91] *Id.* at 6.

[92] Doc. 1 ¶ 114–15.

[93] Doc. 8-1 at 24.

[94] *Id.* at 23.

Idtsrom does not allege that the jury did not follow the jury instructions. Moreover, although the jury instructions were not specifically curative, Idstrom does not allege facts suggesting that the jury instructions did "not cure any effects of the allegedly improper statements made by"[95] opposing counsel in the Underlying Lawsuit. Moreover, the post-trial order in the Underlying Lawsuit contradicts Idstrom's assertion that the trial court found defense counsel's statements about St. Luke's and U.S. Oncology were improper and refused to grant a new trial because German May did not object to the statements. The trial court did not conclude that it would have granted a new trial if an objection had been made. Rather, in its order on post-trial motions in the Underlying Lawsuit, the trial court refused to grant a new trial after explaining the narrow exception for when there is not a contemporaneous objection to a closing argument—"if the conduct was outrageous, repeated and permeated throughout the whole trial."[96] While the trial court agreed with Idstrom that "it was improper for defense counsel to state to the jury that they could not consider U.S. Oncology when deciding whether or not there was a violation of law," the court found this was alleviated by the jury instructions that statements of counsel were not evidence and that the jury could consider evidence of actions prior to May 2009, which would have included U.S. Oncology.[97] Accordingly, as a matter of law, German May's error in not contemporaneously objecting to opposing counsel's closing arguments did not cause Idstrom's KRTA claim in the Underlying Lawsuit to fail and cannot be a basis for Idstrom's legal malpractice claim.

---

[95] *Portugues-Santana v. Rekomdiv Int'l Inc.*, 725 F.3d 17, 27 (1st Cir. 2013).

[96] Doc. 18-2 at 6 ("Appellate rulings in Kansas post-*Siler* have provided for a narrow exception to the general rule [that closing argument misconduct is not a basis for reversal in civil cases in the absence of contemporaneous objection], if the conduct was outrageous, repeated and permeated throughout the trial.") (citing *In re Care & Treatment of Foster*, 280 Kan. 845 (2006)).

[97] Doc. 18-2 at 6.

### 5. Preservation for Appeal of Trial Court's Grant of Summary Judgment on Post-Termination Damages

Lastly, Idstrom alleges that the trial court erroneously granted summary judgment in favor of the Director Defendants on his claim for breach of fiduciary duty resulting in his wrongful termination.[98]  As a result of this ruling, Idstrom alleges he "was prevented from presenting evidence that (a) he was fired so the Director Defendants could make more money on the vRAD merger; and (b) that certain Director Defendants worked to get other shareholders 'on board' with his termination."[99]  German May failed to preserve this issue for appeal by not including the Director Defendants' motion for summary judgment and memorandum in support in the record on appeal.[100]  Whether the KCOA would have reversed the trial court's decision had the issue been properly perfected is a question of law for this Court.  Accordingly, the Court considers whether the KCOA would have reversed the trial court's order and remanded the Underlying Lawsuit for a new trial if German May had properly perfected Idstrom's claims.

German May argues that the failure to perfect for appeal the trial court's grant of summary judgment did not injure Idstrom because he would have lost the appeal because (1) he took a contrary position to the one he took at trial; (2) the trial court judge's ruling was correct; (3) the jury was permitted to consider and award post-termination damages; and (4) the complained of excluded evidence impacted liability on the breach of fiduciary duty claim, which Idstrom won.  The Court addresses each in turn.

---

[98] Doc. 1 ¶ 45.

[99] *Id.*

[100] *Id.* ¶ 82.

### i.    Contrary Trial Position

A litigant who "has sought and procured an order, ruling or judgment in the trial court" cannot take a contrary position on appeal to the one taken before the trial court.[101]  In post-trial motions, Idstrom noted in a footnote that "Dr. Idstrom does not seek a new trial on the breach of fiduciary duty or civil conspiracy claims that were presented.  To the contrary, Idstrom seeks to enforce the jury's verdict and the Court's judgment on those two counts."[102]  On appeal, Idstrom requested that the summary judgment order be vacated and "the case remanded for a fiduciary duty trial solely to allow the jury to determine Dr. Idstrom's full range of damages."[103]

Contrary to German May's position, Idstrom did not assert a contrary position on appeal to what he asserted in his post-trial motions.  His post-trial motion for a new trial did not address the trial court's grant of summary judgment precluding the breach of fiduciary duty claim based on his termination and post-termination damages.  While he wanted to enforce a jury verdict as to the fiduciary duty claims he presented at trial, this did not impact the claims dismissed by the trial court at summary judgment.  Accordingly, this Court finds that on appeal, the KCOA could have ruled on the trial court's grant of summary judgment had the appeal been properly perfected.

### ii.    Trial Court's Ruling

German May argues that the KCOA would not have overturned the trial court's ruling because the trial court reached the proper decision on Idstrom's claim for breach of fiduciary duty resulting in his wrongful termination and post-termination damages.  As an initial matter,

---

[101] *Popp v. Popp*, 461 P.2d 816, 819 (Kan. 1969); *see Rome v. Kan. Dep't of Revenue*, 420 P.3d 501 (Kan. Ct. App. 2018).

[102] Doc. 8-5 at 1 n.1

[103] Doc. 14-1 at 58.

Idstrom asserts that German May is collaterally estopped from asserting that the trial court's ruling in the Underlying Lawsuit was correct as a defense in the present legal malpractice action.

Attorneys defending a legal malpractice suit are not estopped from taking positions contrary to those in the underlying case because positions taken and statements made by counsel in the course of representing a client in an underlying case are not evidence of any of the claims in the underlying lawsuit.[104] "[A]n attorney is an advocate for his or her client and is always trying to put the best case forward,"[105] and using an attorney's representations against them in a legal malpractice action would have a "chilling impact on the vigor and resulting effectiveness" of advocacy."[106] Allowing estoppel would eliminate the plaintiff's burden of showing his likelihood of prevailing on the merits of the underlying claim and relieve the plaintiff of having to allege, and ultimately demonstrate, causation.[107]

To the extent Idstrom relies on *Veatch v. Beck*, in which the Kansas Supreme Court held that the defendant attorney could not "use a point he failed to use in [a] disability case as a defense in the malpractice action,"[108] the Court finds *Veatch* inapplicable here. In reaching its decision, the majority in *Veatch* did not use the doctrine of collateral estoppel.[109] Moreover, the

---

[104] *Power Control Devices, Inc. v. Lerner*, 437 P.3d 66, 73 (Kan. Ct. App. 2019).

[105] *Id.*

[106] *Id.* (quoting *Barcola v. Hourigan, Kluger & Quinn P.C.*, 82 Pa. d. & C. 4th 394, 411 (Pa. Com. Pl. 2006); *see Encyclopedia Britannica, Inc. v. Dickstein Shapiro, LLP*, 905 F. Supp. 2d 150, 155–57 (D.D.C. 2012) (citations omitted) (finding that an attorney defending a legal malpractice action was not estopped from taking positions contrary to those taken as an advocate in the underlying action); *see also Heinze v. Bauer*, 178 P.3d 597, 603 (Idaho 2008) ("[S]tatements made on behalf of a client and under the duty to zealously represent the client may not be characterized as personal admission on the attorney's part." (quoting *Barnes v. Everett*, 95 S.W.3d 740, 747 (Ark. 2003)).

[107] *See Encyclopedia Britannica, Inc.*, 905 F. Supp. 2d at 156 (finding estoppel could not be applied to eliminate the plaintiff's burden of showing his likelihood of prevailing on the merits of the underlying claim).

[108] 850 P.2d 923, 924–25 (Kan. 1993).

[109] *Id.* at 925 (finding the trial court erred in dismissing a legal malpractice action based on the "fundamental rule that a party cannot raise a point for the first time on appeal").

case does not stand for the proposition that in a legal malpractice action based on failure to perfect an appeal, a defendant attorney is precluded from contradicting a position the appellate court refused to hear because of the alleged malpractice. Accordingly, the Court finds that as defendant in this legal malpractice action, German May can assert that the trial court's decision in the Underlying Lawsuit was correct, despite arguing on appeal that it was erroneous.

Next, the Court considers the correctness of the trial court's decision. The Court first addresses Idstrom's argument that the trial court erred by granting summary judgment sua sponte.[110] Under Kansas law, "district courts have the inherent power to sua sponte grant summary judgment."[111] "A judge of a court of general jurisdiction . . . possesses the inherent power to summarily dispose of litigation where there remains no genuine issue as to any material fact."[112] This requires "resolving all facts and inferences which may be reasonably drawn from the evidence in favor of the party against whom a ruling is sought."[113] The trial court sua sponte granted the Director Defendants' unfiled motion for summary judgment on Idstrom's breach of fiduciary duty claim resulting in his wrongful termination at the hearing on the Director Defendants' motion for summary judgment in the Underlying Lawsuit. Idstrom alleges, however, that the trial court did so without the benefit of briefing or explanation. Further, the Court is unable to determine, based on the record currently before it, what the trial court based its summary judgment decision on. Viewing these facts in a light most favorable to Idstrom, the Court finds that it cannot decide as a matter of law at the present motion to dismiss stage that the

---

[110] *See* Doc. 14-1 at 53; Doc. 14 at 46 ("Dr. Idstrom incorporates by reference as though fully set for herein the factual statements and case law citations" in the appellate brief on this issue.).

[111] *HM of Topeka, LLC v. Indian Country Mini Mart*, No. 117,103, 2017 WL 4700404, at *5 (Kan. Ct. App. Oct. 20, 2017) (unpublished table opinion) (citing *Montoy v. State*, 62 P.3d 228, 233 (Kan. 2003)).

[112] *Montoy*, 62 P.3d at 233 (citing *Mo. Med. Ins. Co. v. Wong*, 676 P.2d 113 (1984)).

[113] *HM of Topeka, LLC*, 2017 WL 4700404, at *5 (citing *Montoy*, 62 P.3d at 233).

KCOA would have found that the trial court did not err by granting summary judgment sua sponte.

German May further argues that the trial court correctly granted summary judgment in favor of the Director Defendants on the issue of damages for breach of fiduciary duty arising out of his termination and accordingly, that German May's failure to perfect the record for appeal did not prejudice Idstrom. The trial court granted summary judgment in the Director Defendants' favor on this issue on the basis that "[t]here can't be any breach of fiduciary duty in terminating Idstrom when his contracts of employment specifically provided that employment could be terminated for any reason."[114] While German May is correct that Idstrom's termination did not amount to a breach of contract as Idstrom was an at-will employee, who could be terminated at anytime and with or without cause, this does not necessarily mean that damages for breach of a fiduciary duty could not arise from Idstrom's termination. Under Kansas law, "[d]irectors do not breach their fiduciary duty if they fire an employee, who is also a shareholder, *for a legitimate business reason*."[115]

German May, however, does not point to anywhere in the record before this Court to show that Director Defendants had or cited a legitimate reason for terminating Idstrom. German May also does not assert that the trial court considered whether a legitimate business reason for Idstrom's termination existed. Absent an indication that the trial court considered whether the

---

[114] Doc. 1 ¶ 64.

[115] *Diederich v. Yarnevich*, 196 P.3d 411, 417 (Kan. Ct. App. 2008) (emphasis added) (citing *Richards v. Bryan*, 879 P.2d 638, 647 (Kan. Ct. App. 1994)); *see Hermann v. Rain Link, Inc.*, No. 11-1123-RDR, 2014 WL 1641973, at *17 (D. Kan. April 24, 2014) (denying summary judgment on breach of fiduciary duty claims when it was not clear whether defendants had a legitimate business reason for terminating plaintiff, who was an at-will employee and shareholder); *but see Riblet Prod. Corp. v. Nagy*, 683 A.2d 37, 40 (Del. 1996) (finding, under Delaware law, that no breach of fiduciary duty occurred when an employee-stockholder was terminated per his employment contract and did not allege "that his termination amounted to a wrongful freeze out of his stock interest . . . or contend that he was harmed as a stockholder for being terminated").

Director Defendants had a legitimate business reason for Idstrom's termination, the Court cannot decide based on the record presently before it at the motion to dismiss stage whether the Director Defendants' termination of Idstrom resulted in a breach of fiduciary duty and damages; therefore, the Court cannot dismiss Idstrom's legal malpractice claim on the basis that the trial court correctly granted summary judgment.

### iii. Damages Awarded and Evidence of Liability

Additionally, German May asserts that failure to perfect the record for the appellate court on the summary judgment issue did not prejudice Idstrom because the jury in the first case was directed to and did award Idstrom post-termination damages. Specifically, German May asserts that the record shows the KCOA found that evidence of post-termination damages, including Idstrom's expert's report, was presented to the jury, and further that the KCOA upheld the civil conspiracy award based on this evidence. The KCOA affirmed the trial court's ruling that the record contained sufficient evidence to uphold the jury award of $718,500 for civil conspiracy, noting that the expert testified that Idstrom "suffered approximately $847,000 in damages between August 20, 2007 and February 1, 2012."[116] However, Idstrom was terminated on February 4, 2012, and accordingly, the KCOA's conclusion does not support a finding that the jury considered post-termination damages. Moreover, the expert's report is not in the record before this Court, which precludes the Court from finding that the report included information with respect to damages arising from Idstrom's termination. Accordingly, as nothing demonstrates that evidence on post-termination damages was presented at trial, the Court does

---

[116] *Idstrom v. Alliance Radiology, P.A.*, 388 P.3d 923 (Table), 2017 WL 129926, at *10 (Kan. Ct. App. Jan. 13, 2017).

not have a sufficient record to at this stage find that Idstrom was not prejudiced as a matter of law because the jury awarded him nominal post-termination damages.

Lastly, German May argues that the evidence Idstrom alleges was excluded as a result of the trial court's grant of summary judgment goes to liability as opposed to damages. Idstrom alleges that the trial court's summary judgment ruling on post-termination damages prevented him from presenting evidence that "(a) Dr. Idstrom was fired so certain Director Defendants could make more money on the vRAD merger; and (b) that certain Director Defendants worked to get other shareholders 'on board' with his termination."[117] The jury found in favor of Idstrom on the breach of fiduciary claims as to Defendants Best, Richardson and Varriano for "[p]utting their interest above the interest of a shareholder, Dr. Idstrom, in order to earn more money from a proposed business transaction between the Midwest Division and Virtual Radiology Corp."[118] However, nothing relating to Idstrom's termination was included in the jury instructions pertaining to the claims for the Director Defendants' breaches of fiduciary duties. Moreover, Idstrom further pleads that according to the expert witness, the jury would have awarded him $4,510,588.00 in post-termination damages based on his lost income. Viewing the Complaint in a light most favorable to Plaintiff, the Court finds it plausible that a jury would have found that the Director Defendants' breach of fiduciary duty related to the vRAD merger resulted in his termination and subsequently awarded post-termination damages. Accordingly, based on the record before the Court, it is plausible that Idstrom was prejudiced by German May's failure to perfect the record on appeal on the issue of post-termination damages. Thus, Idstrom states a claim for legal malpractice based on this theory.

---

[117] Doc. 1 at ¶ 66.
[118] Doc. 8-1 at 29, 40, 41, 43.

## B.      Breach of Fiduciary Duty

German May moves to dismiss Idstrom's breach of fiduciary duty claim for failure to state a claim.  To establish a breach of fiduciary duty claim under Kansas law, a plaintiff must show a fiduciary duty, a breach of that duty, and damages resulting from the breach.[119]  Idstrom alleges that German May "had a fiduciary duty to act in good faith and with due regard to [his] interests and were prohibited from placing their interests ahead of [his] interests."[120] Specifically, he alleges that German May breached fiduciary duties by "placing their own financial interests ahead of [his] interests by diverting their attention away from [the Underlying Lawsuit] after converting to a contingent fee arrangement with [him] which resulted in defendants being unprepared for trial," impacting Idstrom's ability to prevail on his claims.[121]

German May asserts that Idstrom's breach of fiduciary duty claim is duplicative of his legal malpractice claim.

> Generally, a fiduciary breach claim is duplicative of a
> "legal malpractice" claim when the operative facts, those that
> actually caused the plaintiffs' injuries, are the same. Thus,
> allegations that constitute negligence, which do not implicate a
> duty of confidentiality or loyalty, and are merely duplicative of
> that cause of action, do not support a cause of action for fiduciary
> breach.[122]

Accordingly, "[w]hen a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the later claim should be dismissed as

---

[119] *Horosko v. Jones*, No. 91,375, 2004 WL 2926665, at *1 (Kan. Dec. 17, 2004) (unpublished table opinion).

[120] Doc. 1 ¶ 129.

[121] *Id.* ¶ 130.

[122] *Johnston v. Alberg*, 329 P.3d 557 (Table), 2014 WL 3732015, at *12 (Kan. Ct. App. July 25, 2014) (citing *In re Brooke Corp.*, 467 B.R. 513, 525–26 (Kan. B.R. 2012); 2 Mallen & Smith, Legal Malpractice § 15.2, 626 (2014 ed.)).

duplicative."[123]  Idstrom alleges that German May placed their financial interests ahead of his

after they entered into a contingency fee agreement, resulting German May being unprepared for

trial and impacting his ability to prevail on his claims.[124]  He further alleges that but for German

May's breach of fiduciary duty, he would have been awarded approximately $25,000,000 in

damages—the identical amount Idstrom pleads as damages in his claim for legal malpractice.[125]

Based on the factual allegations in the Complaint, Idstrom's breach of fiduciary duty claim

mirrors his legal malpractice claim as both rest on German May's alleged unpreparedness and

mistakes at trial, which allegedly prevented Idstrom from recovering the full extent of his

damages in the Underlying Lawsuit.  Accordingly, the Court dismisses the breach of fiduciary

duty claim as duplicative of the legal malpractice claim.

### C.      Count III: KCPA Violation

Defendants assert that Idstrom's KCPA claim is barred by a three-year statute of

limitations, and in the alternative, that Idstrom fails to state a claim for the alleged KCPA

violations.  In his response, Idstrom stipulates to dismissal with prejudice of his KCPA claim.[126]

Accordingly, the Court grants dismissal of Count III.

### D.      Request for Leave to Amend

Idstrom requests the Court grant him leave to conduct discovery and amend his complaint

if necessary.  Under Fed. R. Civ. P. 15(a)(2), leave to amend should be "freely given when

---

[123] *In re Brooke Corp.*, 467 B.R. at 525 (quoting *Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 767 N.E.2d 470, 476 (2002)) (citing Mallen & Smith, Legal Malpractice at § 15:2 n.16 ("Allegations that constitute negligence, which do not implicate a duty of confidentiality or loyalty, do not support a cause of action for fiduciary breach.")).

[124] Doc. 1 ¶ 130.

[125] *Compare* Doc. 1 ¶ 131 (breach of fiduciary duty) *with* Doc. 1 ¶ 127 (legal malpractice).

[126] Doc. 14 at 52.

justice so requires."[127]  D. Kan. Rule 15.1 further provides that a party filing a motion to amend

or motion for leave requires the party filing the motion "(1) set forth a concise statement of the

amendment or leave sought [and] (2) attach the proposed pleading or other document[.]"  "A

dismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting

leave to amend would be futile."[128]   Idstrom provides no specifics as to what discovery and

amendments he anticipates would address the deficiencies in his Complaint and merely states

"[i]f the Court has any hesitance in denying [German May]'s motion with respect to Dr.

Idstrom's legal malpractice and breach of fiduciary duty claims, Dr. Idstrom respectfully

requests that he be allowed to conduct discovery and amend his complaint thereafter as

necessary."[129]  "Such cursory requests for leave to amend are insufficient."[130]  Accordingly, the

Court denies Idstrom's request for leave to amend without prejudice.  The Court finds that facts

may exist that could alleviate some deficiencies in Idstrom's Complaint with respect to Count

I—legal malpractice.  To the extent Idstrom seeks to amend Count I of his Complaint, the Court

directs him to follow the procedure proscribed by D. Kan. Rule 15.1.

**IT IS THEREFORE ORDERED BY THE COURT** that German May's Motion to

Dismiss (Doc. 7) is **granted in part and denied in part.**  The Court **denies in part without**

**prejudice** German May's motion with respect to Count I.  The Court **grants with prejudice**

German May's motion with respect to Count II.  The Court **grants with prejudice** German

May's motion with respect to Count III.  Should Idstrom seek to amend his Complaint to address

---

[127] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[128] *Bangerter v. Roach*, 467 F. Appx. 787, 789 (10th Cir. 2012).

[129] Doc. 14 at 51.

[130] *Id.* (citing *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010), *cert. denied*, 565 U.S. 816 (2011)).

the defects with respect to his legal malpractice claim, he is directed to file for leave to amend

under D. Kan. Rule 15.1, **within fourteen (14) days of the date of this Order.**

**IT IS FURTHER ORDERED** that Counts II and III are **dismissed with prejudice.**

**IT IS SO ORDERED.**

Dated: August 29, 2019

s/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
