**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MARK E. IDSTROM, M.D.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-2013-JAR-TJJ** |
| **GERMAN MAY, P.C., et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Mark E. Idstrom, M.D. brings this action against Defendants German May, P.C., Charles W. German, Brandon J.B. Boulware, Daniel Hodes (collectively, "German May"),[1] alleging legal malpractice stemming from German May's representation in a Johnson County, Kansas District Court case (the "Underlying Lawsuit") that Idstrom brought against his former radiology practice, Alliance Radiology, P.A. and several of its directors. This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 50). The motion is fully briefed, and the Court is prepared to rule. For the reasons fully described below, the Court **grants** Defendants' motion for summary judgment.

## I. Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[2] In applying this standard, the Court views the evidence and all reasonable inferences therefrom

---

[1] Plaintiff also names Defendants John Does 1–10.

[2] Fed. R. Civ. P. 56(a).

in the light most favorable to the nonmoving party.[3]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[7]  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[8]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be

---

[3] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[5] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12]  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[13]  A genuine issue of material facts must be supported by "more than a mere scintilla of evidence."[14]  Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

## II.    Uncontroverted Facts

The following facts are either uncontroverted or viewed in the light most favorable to Plaintiff.

### *Relevant Facts from the Underlying Lawsuit*

Alliance Radiology, P.A. ("Alliance") was incorporated in 2000.  Its bylaws divide operations and administration into separate units based on principal hospital affiliations. Plaintiff Mark Idstrom, M.D. is an interventional radiologist who became an Alliance employee in 2005 in the Midwest Division, which was formerly called the St. Luke's Division.  On July 30, 2007, Plaintiff became a shareholder.  Section 3.2(b) of his employment agreement provided: "Employer may immediately terminate this Agreement at any time with or without cause with

---

[11] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71); *see Kannady*, 590 F.3d at 1169.

[12] *Adler*, 144 F.3d at 671.

[13] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[14] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

[15] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

the approval of Seventy-Five Percent (75%) of the shareholders in Employee's Division (not including Employee)."[16]

Plaintiff eventually became President of the Midwest Division and a member of Alliance's Board of Directors. Defendants Douglas Best, Ralph Richardson, and Joseph Varriano (hereinafter "the director defendants") were also members of the Midwest Division as well as officers and/or directors of Alliance. On January 23, 2012, Dr. Best called for a vote to terminate Plaintiff, which took place during a meeting at Dr. Best's home on January 25.

The January 25, 2012 meeting also had been set to discuss a possible merger between the Midwest Division and Virtual Radiologic Corp. ("vRad"), which Dr. Best and others had been negotiating for months. There were various communications about Plaintiff during these negotiations. On December 21, 2011, vRad executive Jordan Halter told Dr. Best that "Idstrom need[s] to go away,"[17] and sent an internal vRad email the next day attaching a "strawman" proposal that excluded Dr. Idstrom from the merged company. Halter wrote in that internal email that "we will need upfront money to get ride of Partner named Mark Idstrom."[18] On January 4, 2012, Halter emailed Dr. Best that "the #1 thorny issue that I see is Idstrom. . . . 1) the more profit=more 'earn out' for partners on the valuation 2) the less partners moving forward=more 'earn out' for remaining partners."[19] After the January 25, 2012 meeting, Dr. Best emailed Halter notifying him that the vote was "unanimous to separate [Dr. Idstrom] from our division. . . . Needless to say, this is to be held in the strictest of confidence for now."[20]

---

[16] Doc. 51-10 at 1 ¶ 17.

[17] Doc. 51-7 at 129.

[18] *Id.* at 131.

[19] *Id.* at 138.

[20] Doc. 51-6 at 30.

On February 3, 2012, Dr. Best and Dr. Richardson informed Plaintiff that he was terminated without cause. They told him that his work was "excellent," "exemplary and above reproach," and assured him his termination had nothing to do with his abilities as a radiologist or his work ethic.[21] The next day, Dr. Best informed Halter that "Idstrom is done. Went fine."[22] Dr. Best asked Halter to confirm that "dropping Idstrom help[ed] the bottom line," on the valuation of the Midwest Division for purposes of the merger and suggested himself as the CEO of the new merged entity.[23] Plaintiff's termination effectively excluded him from practicing radiology in Kansas City because he, like all Alliance shareholders, was forced to sign a resignation of medical staff membership on the day he was hired. Also, Alliance demands exclusive contracts with hospitals that bar non-Alliance radiologists from working at the hospitals.

In May 2012, vRad executed a "Confidential Term Sheet" with "Shareholder Physicians Operating as the Midwest Division of Alliance Radiology, P.A. and Virtual Radiologic Corporation."[24] The term sheet contemplated an asset purchase of $4.1 million to be split amongst the remaining shareholders of the Midwest Division, as well as additional incremental "earnings" where appropriate and five-year employment agreements for the director defendants. After the term sheet was signed, the director defendants informed the rest of the Board of Directors for the first time of the merger plans.

---

[21] Doc. 64-4 at 1.

[22] Doc. 63 at 59.

[23] *Id.*

[24] *Id.* at 71.

### Pretrial Proceedings

German May is a Kansas City, Missouri based law firm. Plaintiff retained German May to represent him in the Underlying Lawsuit against Alliance and Alliance Directors Douglas Best, Ralph Richardson, Joseph Varriano, Ellen Yetter, Deva Chandramohan, and David Marcus. An October 14, 2013 Pretrial Order set forth the following claims by Plaintiff: (1) violation of the Kansas Restraint of Trade Act ("KRTA") against all defendants; (2) tortious interference with contract, business relations, and business expectancies against all defendants; (3) breach of fiduciary duty against the individual defendants; and (4) civil conspiracy against all defendants. On the breach of fiduciary duty claim, Plaintiff's theories of relief included that the individual defendants "conspire[ed] to remove Dr. Idstrom from the Midwest Division as part of the anticipated transaction with vRad."[25]

On October 30, 2013, the director defendants filed a Motion for Summary Judgment and Memorandum in Support arguing, *inter alia*, that Plaintiff's tort claims were precluded by his contractual relationship with Alliance. Specifically, they argued that the tortious interference and breach of fiduciary duty claims dealing with Plaintiff's employment, compensation, and termination were governed by Plaintiff's employment contract and therefore could not, as a matter of law, provide a basis for tort claims. Plaintiff responded that his tort claims were not precluded by the employment contract, and that his employment contract did not negate the fiduciary duties owed to him by the director defendants.

The trial court granted the defendants' motion on the record at a January 23, 2014 hearing:

> I'm going to grant the fiduciary duty motion with respect to post-termination, and here's the reason. There can't be any breach of

---

[25] Doc. 64-5 at 4.

fiduciary duty in terminating Dr. Idstrom when his contracts of
employment specifically provided that employment could be
terminated for any reason. And now, to suggest that since they—
certain of them did it for a stated reason, he's got a cause of action,
I don't believe so. So, the breach of fiduciary duty as to post-
termination damages is granted.[26]

The court memorialized its ruling in an April 4, 2014 Order, stating in part that "Defendants'

Motion is GRANTED as to Plaintiffs breach of fiduciary duty claim against Defendants Douglas

Best, Ralph Richardson, Joseph Varriano, Ellen Yetter, Deva Chandramohan, and David Marcus

relating to any post-termination damages suffered by Plaintiff."[27]

An Amended Pretrial Order was filed several days later on April 10, 2014. It stated that

Plaintiff had three remaining claims for relief: (1) violation of the KRTA; (2) breach of fiduciary

duty; and (3) civil conspiracy. As to the breach of fiduciary duty claim against the director

defendants, the Amended Pretrial Order states the claim as follows:

> (b) [The director defendants] breached fiduciary duties
> owed Dr. Idstrom in their role as directors by various acts not
> directly related to his termination and that caused damage
> throughout the relevant period (including via the preclusion of Dr.
> Idstrom's ability to work at healthcare facilities with which
> Alliance has "exclusive contracts"), specifically by:
>
> • Putting their interests above the interest of a shareholder, Dr.
> Idstrom, in order to earn more money from a proposed business
> transaction between the Midwest Division and Virtual Radiology
> Corp., following discussions between the directors and Virtual
> Radiology Corp. executives in which it was detailed that "Idstrom
> needs to go away," and that the deal was contingent upon "right
> sizing"; and
>
> • Damaging, or threatening to damage, Dr. Idstrom's reputation at
> healthcare facilities with which Alliance has "exclusive contracts."
>
> Each of these Defendants put their own self-interest ahead

---

[26] Doc. 51-8 at 21:11–19.

[27] Doc. 51-9 at 2 (emphasis in original).

of the interest of a shareholder, Dr. Idstrom, in violation of Kansas law.

The above acts constitute breaches of fiduciary duties owed to Dr. Idstrom.

Dr. Idstrom need not establish each of the above acts to prove a breach of fiduciary duty.[28]

Before trial, Plaintiff filed a Motion to Admit Evidence Related to the Planned Transaction Between the Midwest Division and Virtual Radiology. In his reply in support of that motion, he identified three breaches of fiduciary duty relating to the vRad transaction: (1) "Dr. Best shared confidential and propriety financial information with vRad, resulting in a 'strawman' proposal not shared with Dr. Idstrom that forecast his termination"; (2) "The directors then worked to get other partners 'on board' with these wrongful actions before taking overt steps resulting in Dr. Idstrom's termination"; and (3) "Dr. Best further revealed Dr. Idstrom's impending termination to vRad before revealing it to Dr. Idstrom himself."[29]

The defendants filed objections to the Amended Pretrial Order and opposed Plaintiff's motion to admit evidence about the vRad merger. At an August 28, 2015 pretrial hearing, the trial court orally ruled as followed:

Okay. The Court is going to find that the specific breaches of fiduciary duty are as stated in the reply in support of plaintiff's motion to admit evidence which was filed, it looks like electronically on July 28th, as set out on Page 3 in the first full paragraph numbered (2).

And the Court's further going to find that none of those statements constitute breaches of fiduciary duty, as a matter of law. And the Court is going to find, therefore, that the vRad documents attached

---

[28] Doc. 64-6 at 7.

[29] Doc. 51-20 at 8 (quoting Reply in Support of Plaintiff's Motion to Admit Evidence Related to the Planned Transaction Between the Midwest Division and Virtual Radiology, Underlying Lawsuit, Doc. 252 at 3).

> to this motion are not relevant to the claim of breach of fiduciary duty.[30]

After additional briefing, the court ruled that certain vRad documents were relevant to Plaintiff's KRTA and civil conspiracy claims and ruled they were admissible for that purpose alone. In an Order memorializing this ruling, the trial court specified that all but one exhibit offered by Plaintiff in his motion in limine should be excluded—Trial Exhibit 421.[31] The remaining exhibits sought to be admitted by Plaintiff were admitted.

*Trial*

Plaintiff testified at trial about the economic impact of his termination—that he had been unable to find full-time work—and asked the jury to compensate him based on his economic injuries. Plaintiff further testified about reputational damage he suffered after his termination. Specifically, Plaintiff asked the jury to consider "about $2.5 million" "based on the assumption that I would have worked until age 65."[32] Plaintiff further testified that he was not aware that the Midwest Division was discussing a possible merger with vRad or that there had been ongoing discussions that did not include him.

Plaintiff's economic expert, Dr. Craig Schulman also testified at trial. His expert report was offered and admitted as Exhibit 483 without objection, and with no limiting instruction.[33] Dr. Schulman did not testify about post-termination damages based on the director defendants' breach of fiduciary duty resulting in Plaintiff's termination. However, Dr. Schulman's report contained salary information about the Midwest Division's shareholders, and his opinion that the

---

[30] *Id.* (quoting Aug. 28, 2014 Hr'g Tr., Underlying Lawsuit, Doc. 256 at 60:1–11).

[31] Doc. 69-2 at 2.

[32] Doc. 51-11 at 17:10–16.

[33] Doc. 51-14 (Trial Ex. 483).

damages period began in August 2007 and ended in July 2015, the month that Plaintiff reached

age 65. His report included an opinion on fiduciary duty damages as follows:

> I am not giving an opinion on fiduciary duty liability. However, if
> Plaintiff can prove his claim, fiduciary duty damages are the
> difference between what Plaintiff would have earned (and would
> continue to earn) but-for Defendant's alleged breach of fiduciary
> duty and the actual amount Plaintiff earned and is anticipated to
> earn. Fiduciary duty damages are comparable to antitrust damages
> with one exception, specifically the but-for rate adjustment I made
> with the antitrust damages is unnecessary with regard to fiduciary
> duty damages. Therefore, I do not make the 16.7% adjustment. In
> scenario 1, fiduciary duty damages through July 2015 are $3.3
> million, and in scenario 2, fiduciary duty damages through July
> 2015 are $3.9 million, excluding prejudgment interest.[34]

Dr. Schulman's report included a table calculating these fiduciary duty damage amounts. Table

3 breaks down damages in each scenario by year for "But-For," "Actual, and "Damages." It also

provides for an amount per year after 2015—$714,443 in Scenario 1 and $787,106 in Scenario 2.

Plaintiff offered Exhibits 634, 635, and 636 during Dr. Schulman's testimony. These

documents showed estimates of fiduciary duty damages under "Scenario 1" and "Scenario 2"

broken down for each of the seven directors named in the lawsuit. The trial court excluded the

damage calculations for the period February 2, 2012–July 31, 2015 in these exhibits for Drs.

Richardson, Varriano, and Best, after they objected on the basis of the summary judgment ruling.

The exhibits were admitted in redacted form, showing the breakdown for fiduciary duty damages

by defendant for the period preceding Plaintiff's termination on February 1, 2012, but redacting

the damage calculations post-termination for these three directors only.[35]

---

[34] *Id.* at 16–17.

[35] Defendants object that Trial Exhibit 634 is not mentioned in the record. Initially, Plaintiff only offered
Exhibits 635 and 636, which triggered a lengthy exchange with the court over their admissibility. *See* Doc. 64-1.
After this exchange, the court took a recess before ruling. After ruling that "[a]ny post-termination fiduciary
damages related to Defendants Best, Richardson, and Varriano needs to be removed," from those exhibits, Plaintiff's
counsel offered Trial Exhibit 634, which he agreed to redact consistent with the court's rulings on Trial Exhibits 635

The case was submitted to the jury on several legal theories, including breach of fiduciary duty by the director defendants, as set forth in Instructions 30–35.  Instruction 30 set forth Plaintiff's claim against these director defendants as follows:

> Dr. Idstrom alleges that Defendants Best, Richardson and Varriano breached fiduciary duties owed him in their role as directors, by various acts of self-dealing, including:
>
> • Putting their interest above the interest of a shareholder, Dr. Idstrom, in order to earn more money from a proposed business transaction between the Midwest Division and Virtual Radiology Corp.[36]

Instruction 33(A) directed: "Your verdict must be for Dr. Idstrom if you find that Defendants Best, Richardson, and/or Varriano breached their fiduciary duties owed to Dr. Idstrom and the breach(es) of fiduciary duty caused damage to Dr. Idstrom."[37]  The court further instructed that if the jury found in favor of Plaintiff, it "must award Dr. Idstrom such sum as you believe will fairly and justly compensate Dr. Idstrom for the damages you believe Dr. Idstrom sustained as a result of the occurrence complained of by Dr. Idstrom."[38]  The jury was also instructed on the defendants' mitigation of damages defense.

Verdicts E, F, and H were used for the claims against each of the director defendants respectively.  Except for their names, the verdict forms were identical.  Each form instructed the jury to consider damage awards for three specific time periods: before May 8, 2010; between May 9, 2010 and February 3, 2012; and from February 4, 2012 forward.  The jury returned verdicts in favor of Plaintiff and against the three director defendants.  On each one, the jury

---

and 636.  Doc. 64-2 at 3:3–4:18.  Therefore, the Court deems uncontroverted Plaintiff's statement of fact that he offered all three exhibits at trial and that all three were admitted in redacted form.

[36] Doc. 51-10 at 29.

[37] *Id.* at 33.

[38] *Id.* at 47.

found no damages for the period before Plaintiff's termination, but it did award nominal

damages of $1.00 from February 4, 2012 forward. The jury found in favor of Plaintiff on his

claim for civil conspiracy against the individual defendants and awarded damages in the amount

of $718,500.

***Post-Trial Motions***

The director defendants filed a Motion to Alter or Amend the Judgment on several

grounds, including:

> 2.      The Court instructed the jury that events related to vRad
> could form a basis for breach of fiduciary duty claims against
> Defendants Best, Richardson and Varriano, despite the Court's
> prior ruling on summary judgment that Plaintiff's termination,
> even if a result of vRad negotiations, was not a breach of fiduciary
> duty and its ruling that Plaintiff's allegations relating to vRad did
> not amount to a breach of fiduciary duty as a matter of law.
>
> . . . .
>
> 10.      The jury's verdict on the breach of fiduciary duty claims
> against Defendants Best, Richardson and Varriano is in error
> because the Court previously had ruled in summary judgment that
> Plaintiff could not recover any post-termination damages for
> breach of fiduciary duty.[39]

These defendants further objected that certain comments by Plaintiff's counsel during closing

arguments prejudiced the jury by arguing that Plaintiff had been terminated because of events

surrounding vRad, which the Court had already determined did not breach any fiduciary duty.

The trial court granted the director defendants' motion to alter or amend on the basis of

his previous ruling that they could not be liable for any post-termination damages on the breach

of fiduciary duty claims. The court thus vacated the nominal post-termination damages awarded

by the jury on Verdict Forms E, F, and H.

---

[39] Doc. 51-20 at 9–10.

*Appeal*

Both sides of the Underlying Lawsuit appealed to the Kansas Court of Appeals; German May continued to represent Plaintiff on appeal. Among the issues Plaintiff presented on appeal was "Whether the judgment regarding fiduciary duty should be reversed and remanded for a new trial on damages only because it was a manifest error of law to rule at summary judgment that Dr. Idstrom could not recover post-termination damages for breach of fiduciary duty."[40] He asserted that the trial court erred by *sua sponte* granting summary judgment on post-termination damages, arguing the director defendants did not move for summary judgment on that basis. Plaintiff's record on appeal, however, did not include the director defendants' motion for summary judgment, or memorandum in support. The record on appeal also did not include Trial Exhibits 421, 635 and 636.

Plaintiff argued on appeal that the trial court erred by failing to allow him to present evidence at trial of post-termination damages, that the director defendants secretly shared confidential information with vRad, or that the defendants worked to get other shareholders on board with his termination. Plaintiff also argued that the trial court's legal conclusions on the fiduciary duty claim were flawed for three reasons: (1) in denying Plaintiff's motion to admit evidence, the trial court held that there was no evidence that the defendants fired Plaintiff so that they could make more money in the vRad transaction, which is contrary to an earlier determination made at the summary judgment stage; (2) it was legally erroneous to conclude that the defendants' fiduciary duties were extinguished upon Plaintiff's termination because they were self-dealing; and (3) because Plaintiff was fired for an illegitimate purpose, his claims are not controlled by the contract under Kansas law. Plaintiff asked the appeals court to vacate the

---

[40] Doc. 51-16 at 8, 61–67.

summary judgment order and remand for a trial "solely to allow the jury to determine Dr. Idstrom's full range of damages."[41]

The defendants appealed several issues as well, including the jury's award on the conspiracy claim against Drs. Richardson, Best, and Varriano since post-termination damages on a breach of fiduciary duty claim was foreclosed. Thus, these defendants argued that Dr. Schulman's report could not support the jury's damage awards. The defendants also appealed the sufficiency of the evidence on the breach of fiduciary claim against the three director defendants based on the vRad merger after May 8, 2010.

The Kansas Court of Appeals issued a twenty-five page per curium decision. The court refused to consider Plaintiff's appeal on the issue of post-termination damages:

> As discussed above, Idstrom did not include the Directors' motion for summary judgment or its supporting memorandum in the record on appeal. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. Because the motion for summary judgment is not included in the record on appeal, it is impossible to determine whether the district court improperly raised this issue sua sponte (assuming that may be error) or that the district court improperly granted part of the Director's [sic] motion for summary judgment. With a deficient record, Idstrom's claim on this point fails.[42]

As to the fiduciary duty claim that did go to the jury, the court denied the director defendants' sufficiency of the evidence challenge because when viewed in the light most favorable to plaintiff, the jury could have found that the director defendants took actions that breached their fiduciary duties to Plaintiff, and because the record contained evidence of self-dealing.

---

[41] *Id.* at 67.

[42] Doc. 64-8 at 23 (citation omitted).

The court also found no error in the trial court's decision to allow the jury's award for $718,500 in damages on the civil conspiracy claim to stand despite the fact that it exceeded the jury's nominal damages award on the breach of fiduciary duty claim. The court held that "damages for the tort of civil conspiracy are not limited to the damages awarded for the underlying wrong," and the evidence supported the jury's conclusion that the directors "took specific actions toward accomplishing the vRAD merger that caused harm to Idstrom, even though the merger ultimately wasn't completed."[43] In rejecting the defendants' sufficiency of the evidence appeal on the fiduciary duty claim, the Kansas Court of Appeals discussed the evidence presented at trial about the merger and Plaintiff's termination, finding that "[t]he actions are related and the evidence supports the jury's verdict."[44]

## III. Discussion

Plaintiff's remaining claim in this case is for legal malpractice. Because the Court's jurisdiction is based on diversity, the substantive law of the forum state applies.[45] An action for legal malpractice in Kansas may sound in tort or contract.[46] "Where the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not the contract itself, the action is in tort."[47] It is undisputed that Idstrom's claims sound in tort. To prevail on a legal malpractice claim sounding in tort, the plaintiff must show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between

---

[43] *Id.* at 17.

[44] *Id.* at 12.

[45] *See, e.g.*, *Taylor v. Casey*, 66 F. App'x 749, 753 (10th Cir. 2003).

[46] *Bowman v. Doherty*, 686 P.2d 112, 120 (Kan. 1984).

[47] *Id.*

the breach of duty and the resulting injury, and (4) actual loss or damage.[48]  In addition to the basic elements of a negligence case, the plaintiff must also prove actual damage through the "but for" rule: but for the attorney's negligence, the plaintiff would have succeeded in the underlying lawsuit.[49]

Plaintiff's only remaining malpractice theory in this case stems from German May's failure to perfect an appeal of the trial court's decision granting the director defendants' motion for summary judgment on his breach of fiduciary duty resulting in wrongful termination claim.[50] Therefore, Plaintiff must demonstrate that but for Defendants' failure to perfect an appeal of the summary judgment ruling, Plaintiff would have succeeded in obtaining a new trial on post-termination damages.[51]  The Court incorporates by reference its discussion in the Memorandum and Order ruling on Defendants' motion to dismiss, predicting that the Kansas Supreme Court would follow the majority approach that likelihood of success on appeal should be decided as a matter of law by the court.[52]

Defendants argue that Plaintiff would not have succeeded on appeal for two reasons: (1) Plaintiff introduced substantial evidence of post-termination damages at trial, including Dr. Schulman's report, and the jury was able to consider that evidence and award post-termination

---

[48] *Canaan v. Bartee*, 72 P.3d 911, 914–15 (Kan. 2003) (quoting *Bergstrom v. Noah*, 974 P.2d 531, 553 (Kan. 1999)).

[49] *Mashaney v. Bd. of Indigents' Defense Servs.*, 355 P.3d 667, 677–78 (Kan. 2015) (quoting *Canaan*, 72 P.3d at 914)); *Webb v. Pomeroy*, 655 P.2d 465, 467–68 (Kan. Ct. App. 1982).

[50] All other claims in this matter were dismissed in this Court's August 30, 2019 Memorandum and Order granting in part and denying in part Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Doc. 29.

[51] *See Dings v. Callahan*, 602 P.2d 542, 543–44 (Kan. 1979) (citations omitted) ("An actionable claim against an attorney for professional malpractice asserting failure to prosecute an appeal or protect the client's rights to appeal from an unfavorable judgment or order requires proof that had a timely appeal been taken, a reversal or more favorable judgment would have resulted."); *see also Governmental Interinsurance Exch. v. Judge*, 850 N.E.2d 183, 194 (Ill. 2006); Ronald E. Mallen, 4 Legal Malpractice § 33:118 (2019 ed.).

[52] Doc. 29 at 13–14.

damages; and (2) the Kansas Court of Appeals would not have ordered a new trial based on exclusion of the vRad evidence. Plaintiff responds that he has demonstrated as a matter of law that he would have succeeded on appeal had it been perfected, leading to a new trial on the post-termination damages issue where the jury would have had a more complete presentation of evidence in support of his damages claim.

**A.  Scope of this Court's Ruling on Defendants' Motion to Dismiss**

Defendants previously moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which the Court denied.[53]  As an initial matter, the parties dispute the scope of this Court's prior ruling, and whether it is dispositive in the summary judgment analysis.  As the parties are surely well aware, a motion to dismiss for failure to state a claim requires the Court to assume as true the well-pled factual allegations in order to determine whether the plaintiff states a "plausible" claim for relief.[54]  In deciding a summary judgment motion, the Court looks to matters outside the pleadings in order to determine whether there is a "genuine issue of material fact," such that the movant would be entitled to judgment as a matter of law.[55]  Therefore, an entirely different standard applies to the Court's analysis on this motion as compared to the motion before it last August.  On this motion, the Court has before it a substantial record of documents from the Underlying Lawsuit that it was not privy to at the time of its earlier ruling.

In its August 30, 2019 Order, the Court considered four grounds for dismissal on this claim raised by Defendants in their motion to dismiss.  The Court considered the factual allegations in the Complaint, and the Complaint's two attachments: the complaint in the Underlying Lawsuit, and the Kansas Court of Appeals' per curiam order.  First, the Court

---

[53] Doc. 29.

[54] *See Ashcroft v. Iqbal*, 556 U.S. 662, 662, 678–79 (2009).

[55] Fed. R. Civ. P. 56(a), (c)–(d).

rejected Defendants' argument that Plaintiff would have lost on appeal because he took a contrary position during post-trial motions. Second, the Court declined to rule as a matter of law based on the facts alleged in the Complaint that the Kansas Court of Appeals would have found that the trial court's summary judgment ruling was correct. Third, the Court rejected Defendants' argument that because Plaintiff's expert report was presented to the jury, which included evidence of post-termination damages, the jury considered post-termination damages and therefore there was no prejudice; without the expert report the Court could not determine as a matter of law that it included information with respect to post-termination damages. Finally, the Court concluded that the well-pled facts were sufficient to demonstrate that there was nothing relating to Plaintiff's termination included in the jury instructions, and that the jury would have awarded him more than $4 million in post-termination damages based on his lost income. Only defendants' third and fourth grounds are raised again in this motion.

Plaintiff overstates this Court's prior ruling when he asserts that the Court previously "rejected all of GM's MSJ arguments" in the August 30 Order. As the text quoted by Plaintiff indicates, the Court's previous ruling was limited to "the record currently before it."[56] Specifically, the Court noted that "the expert's report is not in the record before this Court, which precludes the Court from finding that the report included information with respect to damages rising from Idstrom's termination."[57] The Court did not decide the issues presented by Defendants in this motion as a matter of law in its August 30 Order; that ruling was decided under a different standard, based entirely on the facts alleged in the Complaint, and is therefore not binding on summary judgment.

---

[56] Doc. 29 at 30.

[57] *Id.* at 32.

B.      **Likelihood of Success on Appeal**

1.      **Harmless Error**

Plaintiff spends the bulk of his response brief arguing that the trial court erred in dismissing his fiduciary duty claim against the director defendants.  As Defendants correctly argue in their motion for summary judgment, in evaluating whether Plaintiff would have received a more favorable ruling on appeal, the Court must be mindful of the standards that would be applied by the Kansas Court of Appeals on review.  Even if the Kansas Court of Appeals found legal error in the trial court's decision to exclude evidence of post-termination damages at trial, it does not automatically mean that Plaintiff has demonstrated likelihood of success on appeal.  On appeal, an erroneous evidentiary ruling is subject to harmless error review.[58]  The Kansas Court of Appeals would disregard the ruling if it did not affect Plaintiff's substantial rights.[59]

Defendants go a step further and argue that an erroneous grant of partial summary judgment on a discrete issue will be deemed harmless if the issue is tried to and resolved by the jury, citing cases outside of this jurisdiction.  However, in assessing Plaintiff's malpractice claim, this Court must determine how the Kansas Court of Appeals would have applied harmless error.  No Kansas case holds that the harmless error standard applies to motions for summary judgment outside of technical issues, such as compliance with Kansas Supreme Court Rule 141.[60]

In *Russell v. May*, the Kansas Supreme Court considered whether harmless error applied

---

[58] *See* K.S.A. § 60-261; *see Water Dist. No. 1 of Johnson Cty. v. Prairie Ctr. Dev., LLC*, 375 P.3d 304, 314 (Kan. 2016).

[59] K.S.A. § 60-261.

[60] *See, e.g.*, *Rhoten v. Dickson*, 223 P.3d 786, 795 (Kan. 2010).

to a trial court's decision granting a motion for judgment as a matter of law.[61]  The court expressed its "reticence to endorse a standard applicable to all similar cases specific to motions for judgment as a matter of law."[62]  Instead, the court considered non-binding caselaw from other jurisdictions and concluded that the trial court's error in granting judgment as a matter of law could not be declared harmless.[63]  The court applied case law that found harmless error in two situations: (1) where a jury either "answered special questions that allowed the court to apply the jury's findings of fact to a dismissed count or party,"[64] and (2) where the jury's verdict on certain defendants "necessarily defeated the plaintiff's claim on a dismissed count or against a dismissed defendant."[65]  In *Russell*, the court could not find the error was harmless because the jury did not answer special questions on its verdict that could be applied to the remaining defendant, nor did the jury's verdict "necessarily prove what the verdict would have been as to" the dismissed defendant.[66]

Here, the Court assesses the impact of a narrow claim of malpractice—Defendants' failure to designate the appropriate record to appeal the trial court's summary judgment ruling against three defendants for breach of fiduciary duty by terminating Plaintiff, causing him post-termination damages.  On appeal, Plaintiff requested that the court vacate the summary judgment order and remand for a trial "solely to allow the jury to determine Dr. Idstrom's full range of

---

[61] 400 P.3d 647, 665 (Kan. 2017).

[62] *Id.*

[63] *Id.*

[64] *Id.* (citing *Earle v. Benoit*, 850 F.2d 836, 845 (1st Cir. 1988); *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 489–90 (Utah Ct. App. 1991)).

[65] *Id.* (citing *Toomey v. Tolin*, 311 So. 2d 678, 681 (Fla. Dist. Ct. App. 1975); *Janich Bros., Inc. v. Am. Distilling Co.*, 570 F.2d 848, 861 (9th Cr. 1977); *Goulet v. New Penn Motor Exp., Inc.*, 512 F.3d 34, 42–43 (1st Cir. 2008)).

[66] *Id.* at 666.

damages."[67]  Defendants argue that even if the trial court's summary judgment ruling was in error, the Kansas Court of Appeals would have found the error harmless in light of the evidence presented at trial and the verdict, rather than order a new trial as requested by Plaintiff. Therefore, this Court must evaluate whether the Kansas Court of Appeals would have determined that the jury's verdict at trial applied to Plaintiff's post-termination damages claim against the three director defendants, or if it necessarily defeated that claim.

### 2. Evidence and Findings of Plaintiff's Termination and Post-Termination Damages at Trial

Defendants argue that any error by the trial court would have been considered harmless by the court of appeals because Plaintiff presented evidence of his post-termination damages at trial and the jury, after considering this evidence, awarded nominal post-termination damages.  It is uncontroverted that Plaintiff's own testimony and Dr. Schulman's report were admitted at trial and support Plaintiff's post-termination damages request.

Plaintiff insists that evidence supporting his post-termination damages claim was excluded at trial, but he fails to adequately identify such evidence.  The uncontroverted facts establish that only four exhibits proffered by Plaintiff were excluded: Exhibits 421, 634, 635, and 636.  But the record on appeal did not include these exhibits, so the Kansas Court of Appeals could not have determined whether their exclusion was harmless.  Also, Defendants have demonstrated that out of the fourteen exhibits Plaintiff offered in conjunction with his motion in limine to admit evidence on the vRad merger, thirteen of the exhibits were admitted.  Only Exhibit 421 was excluded, and Plaintiff fails to argue how this exhibit would have prevented a

---

[67] Doc. 51-16 at 67.

harmless error finding by the jury. Rather, he makes a blanket claim that "evidence supporting Dr. Idstrom's breach of fiduciary duty claim resulting in his termination was excluded at trial."[68]

Plaintiff argues that Dr. Schulman's report does not allocate damages to any individual defendant, as compared to Exhibits 634, 635 and 636. But again, these exhibits were not part of the record on appeal. Importantly, Plaintiff's malpractice claim in this case does not challenge Defendants' decision not to appeal the trial court's evidentiary ruling on these exhibits. Therefore, the Court cannot consider these exhibits in assessing whether Plaintiff would have prevailed on appeal if the summary judgment ruling had been properly perfected. Even if the Court could consider these exhibits, they are cumulative to the expert's report, which was admitted in full.[69] While the proffered exhibits may break down damages by individual defendant, the report itself provides a damages calculation for post-termination damages and his methodology for reaching those numbers. The jury had Plaintiff's testimony, the redacted versions of Exhibits 634, 635 and 636, and the unredacted expert report to consider when reaching its verdict.

The jury's verdict forms for the director defendants on fiduciary duty damages were split into three time periods: before May 8, 2010; between May 9, 2010 and February 3, 2012; and from February 4, 2012 forward. On each of the three verdict forms, the jury found no damages for the period before Plaintiff's termination, but it awarded nominal damages of $1.00 from February 4, 2012 forward, after his termination. This Court finds that the verdict form necessarily shows what the verdict would have been for the dismissed defendants on the post-termination damages claim—$1.00 each. In fact, the trial court vacated these nominal damage

---

[68] Doc. 64 at 18, 29.

[69] *See Walters v. Hitchcock*, 697 P.2d 847, 850 (Kan. 1985) (citing *Powers v. Kan. Power & Light*, 671 P.2d 491, 500 (Kan. 1983)).

awards precisely because they were contrary to its summary judgment ruling that post-termination damages were foreclosed as to these three defendants.[70] Thus, the Court finds as a matter of law that Plaintiff cannot prove that he would have prevailed on appeal had he preserved the summary judgment record; the verdict necessarily shows that the jury would have awarded only nominal damages, and therefore the Kansas Court of Appeals would have found any error was harmless.

Plaintiff falls back on this Court's August 30, 2019 Order ruling on the motion to dismiss in arguing that the Court has already definitively ruled that the jury was not allowed to consider evidence of post-termination damages and that Plaintiff's termination was not included in the jury instructions. But neither passage upon which Plaintiff relies supports this argument. As already discussed, the Court decided Defendants' motion to dismiss solely based on the allegations in the Complaint. The Court had neither the trial evidence, nor the record on appeal, nor the jury instructions before it, as it does now. And the Court made clear that its rulings were based on the record at the time. Now that the expert report is in the record, it is plain that the jury did have evidence before it of Plaintiff's post-termination damages.

Likewise, the Court's discussion of the jury instructions in its prior Order was solely based on Plaintiff's allegations in the Complaint. This more complete record includes the verbatim jury instructions from the Underlying Lawsuit, which do not foreclose post-termination damages. While the claim instruction as to Best, Richardson, and Varriano did not include his claim that he was wrongfully terminated, it did include the claim that these defendants' activities involved "various acts of self-dealing," which included putting their own financial interests

---

[70] *See* Doc. 64-8 ("the district court did vacate . . . the posttermination damages award against Best, Richardson, and Varriano because the district court previously ruled Idstrom could not recover posttermination damages and that part of the jury instruction directing the jury to consider posttermination damages was in error.").

above Plaintiff's in pursuing the vRad merger. Also, the damages instructions did not foreclose the jury from awarding post-termination damages. Instruction 38 directed the jury that if it found in favor of Plaintiff on the fiduciary duty claim, it should award "such sum as you believe will fairly and justly compensate [Plaintiff] for the damages you believe [he] sustained as a result of the occurrence complained of by [Plaintiff]."[71] This instruction read in conjunction with Verdict Forms E, F, and G, which explicitly sought verdicts on fiduciary duty damages during the post-termination time period, permitted the jury to consider the post-termination damages evidence presented at trial, and award a sum to Plaintiff. That these verdicts were later vacated is only further evidence that they demonstrate what the jury would have awarded if permitted to render such an award.

Given that the parties stipulated that the Midwest Division shareholders voted unanimously to terminate Plaintiff's employment, and that he was terminated without cause on February 3, 2012, Instruction 30 did not foreclose the jury from considering Plaintiff's termination in conjunction with the breach of fiduciary duty claim. As the Kansas Court of Appeals noted in rejecting the defendants' challenge to the sufficiency of the evidence on the remaining fiduciary duty claim, the actions Drs. Best, Richardson, and Varriano took to facilitate Plaintiff's termination were related to the vRad merger and support the jury's verdict on that claim.[72]

In sum, Defendants have pointed to a lack of evidence that but for Defendants' failure to perfect an appeal of the summary judgment ruling, Plaintiff would have succeeded in obtaining a new trial on post-termination damages. Defendants have demonstrated that even if the summary

---

[71] Doc. 51-10 at 47.

[72] Doc. 64-8 at 12.

judgment ruling was in error, the Kansas Court of Appeals would have found the error harmless. Plaintiff has failed to come forward with evidence to demonstrate a genuine issue of material fact on the causation element of this malpractice claim so summary judgment is granted in Defendants' favor.

### C.    The Remaining John Doe Defendants 1–10

The only remaining Defendants in this matter are John Does 1–10, which Plaintiff alleges include but are not limited to "German May's predecessor company Rouse, Hendricks, German May and its attorneys and/or employees."[73]  Plaintiff alleges he may learn through discovery that they were involved in Plaintiff's representation in the Underlying Lawsuit.  Since this lawsuit was filed on January 11, 2019, Plaintiff has made no effort to identify these John Doe Defendants, nor have they been served.[74]  Because Plaintiff's only allegations against these individuals are generalized, and because the Court has determined that dismissal or summary judgment is warranted as to all of Plaintiff's claims in this matter, Plaintiff shall show cause in writing to the Court by April 24, 2020, why the John Doe Defendants should not be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because it is "patently obvious" that Plaintiff could not prevail on the facts alleged against these remaining unidentified Defendants and allowing him an opportunity to amend would be futile.[75]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants German May, P.C., Charles W. German, Brandon J.B. Boulware, Daniel Hodes' Motion for Summary Judgment (Doc. 50) is **granted**.

---

[73] Doc. 1 ¶ 6.

[74] *See Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996) (requiring adequate description of unnamed defendants in order "to identify the person involved so that process can eventually be served.").

[75] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**IT IS FURTHER ORDERED** that Plaintiff shall show cause in writing by April 24, 2020 why Defendants John Does 1–10 should not be dismissed with prejudice for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  If no response is filed by that date, this case will be dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**


Dated: April 8, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
